DAVID BIGGS, Trustee of KLINE-DRUMMOND MERCANTILE COMPANY, Appellant, v. EDWARD WESTEN et al.

Division One, February 28, 1913.

1. **TRUSTEE IN BANKRUPTCY: Right to Sue: Real Party in Interest.** The trustee in bankruptcy is in law the representative of the creditors of the estate only in the sense that it is his duty to collect, for their benefit and for due administration in the bankrupt court, all the assets of the estate. But it is not his duty to represent any creditor in the matter of establish-

ing and prosecuting his claim against the bankrupt in any court. It is not his duty to appeal on behalf of a claimant of the bankrupt estate whose claim, in a suit in the circuit court by the trustee against the stockholders of the bankrupt corporation, has been denied, and only for the purpose of having such claim established, where such claimant could himself have appealed in his own right. But owing to the unusual circumstances of this case, the appeal is not dismissed on the ground that it is not prosecuted in the name of the real party in interest.

2. CORPORATION: Unpaid Stock: Creditor: Knowledge. A creditor of a corporation, who becomes such with knowledge that its common stock, though purporting to have been paid in full, was in fact neither paid nor to be paid, but was issued merely as a bonus for the subscription and payment for preferred stock, cannot enforce his claim against the corporation by compelling its shareholders to pay to the corporation, its trustee or other representative, any portion of the common stock so issued. A claimant who subscribed for and received a certain amount of preferred stock of a corporation, and one-half as much common stock as a bonus for his subscription and payment of the preferred at par, and with knowledge of an agreement that the common stock, though reciting it was full paid, was not to be paid, and thereafter exchanged all his stock, preferred and common, for the bonds of the company, cannot, upon the failure of the company, compel an assessment on the shareholders of the common stock to pay the bonds held by him.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Bland & Cave* for appellant.

(1) The payment of all of the bonus stock is necessary for the payment of all of the creditors unless some are held to be estopped, and there is nothing in the evidence which would prevent the company itself, even though a going concrn, from enforcing the payment of this bonus stock and therefore no creditor can, on any theory, be estopped. The holders of this stock are indebted to the corporation itself and the amounts due thereon are an asset of the company and

the plaintiff trustee in bankruptcy is entitled to re-
cover the same for the payment of any creditors. (2)
There is some evidence from which it might be infer-
entially said that there was a sort of general oral
understanding among the promoters and organizers
that the payment of this stock would not be enforced,
but it is not sufficient to constitute a contract, even
on the part of the promoters. And, furthermore, if it
were sought to avoid liability on the subsequent abso-
lute contract of subscription on the ground that these
oral terms were to be inserted therein and were left
out through fraud, accident or mistake, it would be
necessary so to plead. None of the defendants have
done so. Railroad v. McCormick, 90 Iowa, 446; Rail-
road v. Conway, 177 Pa. St. 364; Payson v. Withers,
No. 10664 Fed. Cas. (3) Again, even if there had
been such a contract between the promoters and pros-
pective stockholders, or such representations by the
promoters, it would not be binding on the corporation
unless subsequently ratified by it or in fact remade by
it. Joy v. Manion, 28 Mo. App. 59; Ollesheimer v.
Thompson Mfg. Co., 44 Mo. App. 172; Haskell v. Sells,
14 Mo. App. 91; Hill v. Gould, 129 Mo. 106; Chouteau
v. Dean, 7 Mo. App. 210; Prilsining v. Templeton, 2
Mo. App. 424. There is absolutely no evidence of any
such ratification or new contract on the part of the
company. (4) On the contrary the contract entered
into between the subscribers to the articles of associa-
tion and the subscription agreement and the corpora-
tion was a written promise to pay for the stock sub-
scribed for, absolute on its face, and purporting to be
complete, and it cannot be varied, even as against the
corporation, by proof of any oral agreement or under-
standing between the corporation or its promoters and
such subscribers either contemporaneous therewith or
prior thereto. It is needless to discuss that proposi-
tion, however, as the record fails to disclose any con-
tract between the defendants and the corporation other

than the one evidenced by the subscription to the articles of association. Joy v. Manion, 28 Mo. App. 59; Cook on Corporations, sec. 137; Railroad v. Conway, 177 Pa. St. 364; Nebraska Expo. Co. v. Townley, 46 Neb. 893; Railroad v. McCormick, 90 Iowa, 446; Railroad v. Conway, 177 Pa. St. 364; Martin v. Remington, Martin & Co., 88 N. Y. Supp. 573; Merrick v. Consumers H. & E. Co., 111 Ill. App. 155. (5) Unless then some corporate action was taken subsequent to the signing of the articles of association by which the corporation contracted and agreed to waive the said payment or to accept something less than full payment, or property in payment, the said stockholders are still bound to the corporation itself by their unconditional promises to pay. The evidence fails to show any such subsequent agreement. (6) The fact that the certificates of stock contained the words "full paid and non-assessable" is immaterial. At most the legal effect of the words in question was a stipulation against liability to further taxation after the holder had fulfilled his contract to pay the par value of the stock. Van Cleve v. Berkeley, 143 Mo. 119; Upton v. Tribilcock, 91 U. S. 48.

*W. F. Evans, Marion C. Early*, and *Frank K. Ryan* for certain respondents. *G. B. Silverman, Carl Otto, Igoe & Carroll*, and *Julius T. Muench* of counsel. *Stanley D. Pearce* for respondent J. H. Christopher; *Lewis & Rice* for respondent Graham Paper Company; and *Stewart, Bryan & Williams* and *Harold R. Small* for respondent J. E. Smith.

(1) Each and every stockholder who extended credit to the corporation with knowledge of the conditions under which the common stock was issued is estopped to assert any liability against any shareholder for any unpaid part on such stock. It therefore follows that one extending credit with such knowledge could not create a preference in his own favor. Bell's

Appeal, 115 Pa. St. 921; Trust Co. v. McMillan, 188 Mo. 547; Meyer v. Mining Co., 192 Mo. 162; Dickerson v. Trust Co., 176 U. S. 161. (2) Johnson received 61 shares of common stock through the contract between the American Supply Co. and the Kline-Drummond Mercantile Co. and is in this case joined as a co-defendant. It was found that he received this stock with full knowledge and without paying for it. He should be held to pay his pro rata share on this stock and the judgment, to that extent, should be modified, if the appeal is permitted to stand. Smith v. Heidecker, 39 Mo. 157; Moore v. Bank, 111 U. S. 156. (3) Nor could he secure a better standing in a court of equity by arranging with the trustee, whose duties are limited by law, to aid him to establish his claim.

## STATEMENT BY THE COURT.

This is an action in equity to recover from J. B. Johnson and other stockholders in the Kline-Drummond Mercantile Company, a corporation, payment of the par value of its common stock which had been issued without payment and as a bonus to the subscribers for the preferred stock of said corporation, in the proportion of one share of common to every two shares of preferred.

The suit was filed by the trustee in bankruptcy by authority given by the referee in bankruptcy. The petition did not set forth the particular creditors of the bankrupt or their respective claims, but alleged that the liabilities of the bankrupt corporation were in excess of $115,000, and that it had no assets except its unpaid stock subscriptions; and prayed an accounting between the bankrupt and the several defendant stockholders, and for judgment against each of the defendants, and execution thereunder for enough to pay the debts of the bankrupt.

The defendants answered separately. The answer of defendant J. B. Johnson admitted the author-

ity of the plaintiff to sue, and denied the other allegations. The other defendants set up payment by them of the common stock which they had received, and prayed certain set-offs for the amounts of certain claims held by them against the bankrupt. The case was referred. On the hearing before the referee it appeared that prior to the incorporation of the bankrupt company (Kline-Drummond Mercantile Company), a corporation known as the "American Supply Company" was engaged in conducting a mail order business through sales made by its agents; that the stockholders of this corporation desired to form another which should conduct a similar business on a larger scale by direct correspondence with purchasers and which would employ no agents. To carry out this purpose the Kline-Drummond Mercantile Company was incorporated with a capital stock of $400,000 —$160,000 preferred and $240,000 common stock— each share to be of the par value of $100, and the certificate therefor to recite it to be full paid and non-assessable. It was agreed by the corporation that any subscriber or purchaser who should take and pay the par value of any of its preferred stock should also receive as a bonus and without any further payment one-half as much of its common stock. These proposals were recited in the prospectus issued before the formation of the corporation and exhibits by its chief promoter, one John W. Baker. After the issuance of its preferred and common stock on this plan there remained in the hands of the new corporation 1600 shares of its common stock which were disposed of by transfer to the former corporation (the American Supply Company) in exchange for its mailing list of customers. The American Supply Company after effecting this exchange donated 350 shares of the common stock thus acquired by it to the said John W. Baker for his services in promoting the new corporation, and divided the residue, to-wit, 1250 shares, as

a stock dividend among its own shareholders. The. defendant J. B. Johnson received sixty-one of such shares. A circular letter explaining this transaction was mailed to each stockholder of the American Supply Company.

The new corporation having thus disposed of its preferred and common stock, entered upon its business venture and soon thereafter became considerably indebted; and about July, 1904, issued bonds for $40,000. These were purchased by its own directors. It became also indebted in large sums to two banks and a trust company, evidenced by notes indorsed by its directors. At the time of the issuance of the bonds of the Kline-Drummond Mercantile Company, defendant J. B. Johnson, who held its preferred stock of the par value of $10,000 and the bonus given therewith and who had also received sixty-one shares of its common stock in virtue of his holdings in the American Supply Company, effected an exchange of the preferred and common stock so held by him for bonds of the Kline-Drummond Mercantile Company of the par value of his preferred stock.. This transaction was had through his attorney under instructions otherwise to ejoin the bond issue and apply for a receivership.

In 1905 the board of directors sold the tangible assets of the corporation and applied their proceeds to the payment of its indebtedness. This left an outstanding indebtedness against said corporation, evidenced by its notes, amounting to about $78,000. This outstanding indebtedness was settled by the agreement of John W. Baker, the promoter of the corporation, to take care of $10,000 thereof and by the contribution of $68,000 in cash made by certain directors and shareholders of the company through a Mr. Held, appointed to act for them and in whose hands they placed this sum for the purpose of paying the remainder of the notes, and upon an agreement that they should be

credited by the corporation for full payment of any
liability against them, respectively, as the holders of
its unpaid common stock, and that the corporation
should become indebted to them in the amount of
the excess of their advancement over and above such
credit. The corporation was further indebted in cur-
rent accounts in sums aggregating about $2700.35; and
was adjudged a bankrupt. After this was done the
notes of the corporation acquired by the agent of the
contributing payors were credited by the amounts sev-
erally due by them on the unpaid common stock which
they held. The credit thus given amounted to $33,750
and left a balance of $34,250 due from the bankrupt
corporation to the agent of said directors. This bal-
ance was one of the claims exhibited in the bankrupt
proceeding on behalf of said directors. There were
also exhibited in that proceeding the claims of all the
bond holders (including the claim of defendant J. B.
Johnson for $11,902.50), aggregating $41,522.50.

The referee in the State court disallowed all these
claims which had been filed in the bankrupt proceed-
ing except the following:

| | |
|---|---:|
| St. Louis Steel Range Co. | $ 2,500.00 |
| W. B. Gaston & Sons | 12.00 |
| H. M. Buck | 62.55 |
| James H. Christopher | 125.80 |
| J. B. Johnson | 11,902.50 |
| | $14,602.85 |

With reference to the item in the above statement
of $11,902.50 claimed by J. B. Johnson, the referee
held that no assessment for its payment could be
made against any of the persons who received the
common stock of the bankrupt through the medium
of the American Supply Company. The referee held
that defendant Johnson was debarred from calling up-
on the holders of this particular stock for payment,
for the reason that he had taken some of the same

kind ($10,000) himself with full knowledge that it was unpaid and not to be paid beyond ten per cent of its face value. The referee, however, held that the evidence did not show that defendant J. B. Johnson knew that the bonus stock given to subscribers or purchasers of the preferred stock of the Kline-Drummond Mercantile Company was not to be paid for, although he did know that the portion of such common stock received by himself as a bonus for the $10,000 par value of preferred stock acquired by him was not to be paid for; nor did the other testimony charge him with such knowledge, i. e., that the bonus common stock so given to other purchasers was not to be paid.

The report of the referee as to the Johnson claim and as to certain other matters was set aside by the judge of the circuit court, who gave final judgment disallowing the claim of defendant J. B. Johnson *in toto.*

The defendants, including J. B. Johnson, filed separate motions for a new trial, which were overruled. None of the defendants took any appeal from the decree of the circuit court. The trustee in bankruptcy, in August, 1909, took an appeal, seemingly without any direction so to do by the referee in bankruptcy, and only after a contract with the attorney of defendant Johnson whereby the expenses of the appeal should be paid in advance by said Johnson. The other defendants have expressed themselves in oral argument as satisfied with the judgment below, and have filed motion to dismiss this appeal, alleging, among other grounds, that it was taken by the trustee in behalf of J. B. Johnson and not to secure the payment of any just demands against the bankrupt, all of which they aver could be satisfied out of the avails of the judgment below. In support of this motion they have filed certified copies of two reports of his proceedings in the matter under review made by the trustee to the referee in bankruptcy. Thse reports are, in part, to-wit:

The undersigned further represents that by the holding of the circuit court in said cause, the plaintiff, trustee in bankruptcky, of the Kline-Drummond Mercantile Company, is allowed to recover against the defendant stockholders for the payment of the. following debts proved and allowed in bankruptcy, to-wit:

St. Louis Steel Range Company .................$2,500.00
W. B. Gaston & Co. ...........................   12.00
W. A. Buck ..................................    52.65
and James H. Christopher ....................'.........  125.80

. Under this judgment the undersigned respectfully represents that he will be able to recover the amounts of the afore-mentioned claims in full, together with all costs of the administration of the bankrupt estate, including the referee's fees, attorneys' fees, fees of attorneys for bankruptcy, attorneys for petitioning creditors, and attorneys for trustee, and all costs of whatever kind or nature whatsoever. . . .

Respectfully submitted,
(signed)   DAVIS BIGGS, Trustee.

That outside of the above balance, the estate has no asset other than the suit filed in the circuit court against the stockholders of the bankrupt company to collect their unpaid subscriptions to the capital stock. That final judgment has been entered· in said cause, as heretofore reported, and an appeal has been taken to the Supreme Court of Missouri by the undersigned trustee at the request of J. Brooks Johnson, whose claim against the estate has been allowed in sum of $11,000; that the appeal was taken under an agreement between the undersigned trustee and the counsel for J. Brooks Johnson; that all costs of the appeal be paid in advance by Mr. Johnson. The undersigned trustee is advised that this case will not be set for hearing in the Supreme Court for· some time.

Respectfully submitted,
DAVIS BIGGS, Trustee.

BLAND & CAVE,
Attorneys for Trustee.

The essential part of the decree in the circuit court from which the present appeal is prosecuted was the finding that none of the bondholders of the corporation could enforce such indebtedness against the holders of its common stock, and that no other creditors could do so except those mentioned in the above report for the respective debts therein stated. It was not claimed either in briefs or in oral argument that said judgment of the circuit court would not suffice to fully pay the total amount of the debts due said

creditors and the expenses of the proceeding in the bankrupt court and the suit in the State court. Hence the practical question on this appeal is, whether or not the claim of defendant J. B. Johnson shall be established against the bankrupt estate.

## OPINION.

### I.

BOND, J. (after stating the facts as above).— The trustee in bankruptcy is in law the representative of the creditors of the estate only in the sense that it is his duty to collect for their benefit and for due administration in the bankrupt court all the assets of the estate. But it is not his duty to represent any creditor in the matter of prosecuting his claim against the bankrupt in any court. The position of the creditors as to each other in all cases where the estate is insufficient to pay its entire indebtedness, is one of antagonism; and the prosecution of their respective claims to an allowance in the bankruptcy proceeding, or a judgment in other courts, is a matter which concerns only the holders of such claims and forms no part of the legitimate duties of a trustee appointed to collect and conserve the estate of the bankrupt in order that it may be applied to the payment, as far as possible, of all the debts and demands established against it.

*Trustee in Bankruptcy.*

In the matter in hand, defendant J. B. Johnson appears to be the only claimant who felt aggrieved by the judgment of the circuit court. He could have appealed therefrom in his own right; and failing so to do, it was not the duty of the trustee to take that step in his behalf. Neither was it the duty of the trustee to appeal in his own right as a representative of the estate of the bankrupt, if, as is shown by his reports to the bankrupt court, the judgment of the circuit court was available to pay all the demands adjudged against the bankrupt. We think the appeal under the facts

shown in this record was ill advised and necessarily tended to postpone the collection of enough assets to pay the liabilities adjudged against the estate in the hands of the trustee. We do not ascribe to the trustee any improper motive in the matter or intentional wrongdoing, but we do hold that he misapprehended the scope of his duties, and that the legal services of his attorneys in this court directed to the establishment of the claim of defendant J. B. Johnson are not justly chargeable to the estate and should not be compensated out of its assets.

We have decided, however, to reserve a ruling on the motion to dismiss the present appeal on the ground that it is not prosecuted in the name of the "real party in interest" (R. S. 1909, sec. 1729 et seq.) and have concluded, after an examination of the entire record, to dispose of the question of the enforceability of the claim of the defendant J. B. Johnson on its merits.

II. The testimony in the record shows that the name of J. Brooks Johnson was on the list of subscribers for the preferred and common stock of the Kline-Drummond Mercantile Company; and though said to have been written by the promoter, J. W. Baker, the fact remains that the stock set out opposite his name was received by him and that he paid the par value of the preferred portion to the corporation direct, and received without further payment the same proportion of common stock allotted to other subscribers. The indorsement on the back of the certificates is admittedly in his own hand writing. Upon this evidence and that of other witnesses touching his knowledge of the plan of stock issuance, we find the fact to be that he knew that the corporation was issuing its common stock to the subscribers and purchasers of its preferred stock, with the understanding that nothing whatever should be paid by the recipients of such stock. These conclusions as to the

*Corporation: Unpaid Stock.*

evidence were reached by the trial judge, and they are abundantly sustained by the weight of the credible testimony contained in this record.

We further find as a fact that the defendant J. B. Johnson had full cognizance of the foregoing facts at the time he exchanged his preferred and common stock for the bonds of the company, upon which he subsequently sought to establish an indebtedness against it in the bankrupt court. And that he became a creditor of the corporation with full knowledge at the time that it had issued its common stock upon an agreement that it was not to be paid for by persons receiving it; and, hence, that he did not extend any credit to the corporation upon faith in its ability to demand payment for its common stock. The law is well settled in this State that no creditor of a corporation, who becomes such with knowledge that its stock, though purporting to have been paid in full, was in point of fact neither paid nor to be paid, but was issued merely as a bonus for the subscription and payment for other stock, can enforce his claim against the corporation by compelling its shareholders to pay to the corporation, its trustee or other representative, any portion of the stock so donated. [Meyer v. Mining & Milling Co., 192 Mo. 162; Trust Co. v. McMillan, 188 Mo. l. c. 567; Shields v. Hobart, 172 Mo. 491; Berry v. Rood, 168 Mo. 316; Woolfolk v. January, 131 Mo. l. c. 637.]

In the light of this legal principle and according to the preponderance of the testimony in the record showing that defendant Johnson could not have been ignorant of what every other stockholder knew when he acquired his stock in said corporation, the judgment of the trial court excluding the enforceability of the bonds held by him just as it debarred all the other holders of such bonds was manifestly right; and it is affirmed. *Woodson, P. J., Lamm* and *Graves, JJ.,* concur.