EDWARD J. SCOTT and JOHN R. SCOTT, Appellants, v. GEORGE E. W. LUEHRMANN and EDWARD H. LUEHRMANN.

In Banc, June 14, 1919.

1. **ACTION: Right to Recover: Dismissal.** Where plaintiffs' petition states a cause of action and its allegations are sustained by the evidence they are entitled to recover, and it is error to dismiss their bill, unless some one of the affirmative defenses pleaded is sustained by a preponderance of the evidence and is sufficient in law to prevent a recovery.

Scott v. Luehrmann.

2. ———: ———: Scope of Pleadings. It is elementary that courts of equity are powerless to administer redress beyond the legitimate scope of the pleadings.

3. CORPORATION: Suit by Plaintiffs on Assigned Judgment: Contribution: Scope of Pleadings. After plaintiffs had obtained judgment for debt against a corporation, and to enforce it they had brought suit against its stockholders to whom had been issued full paid-up stock for which they had not paid, a number of stockholders entered into an agreement to put a sum of money in the hands of a trust company as trustee, to be held for the purpose of defending the suit and discharging any judgments that might be rendered, and a committee of the body thus formed purchased plaintiffs' judgment and took an assignment of it in blank after the present suit, stating *nulla bona* returns on two executions against the company and asking for judgment against two stockholders, was brought, the purpose of the agreement being to enforce contribution from other stockholders who had refused to join in the arrangement. No substitution of parties was made after the assignment of the judgment, and the cause proceeded in the name of the original plaintiffs. *Held*, that the assignment, under the circumstances, did not preclude the original plaintiffs from prosecuting the suit to enforce the judgment; and, whatever may be the equities between plaintiffs and defendants who have acquired a beneficial ownership of the judgment, to compel an accounting and contribution among themselves, as no such matters were presented by the pleadings, they must necessarily be excluded by the court in its decree.

4. ———: Unpaid Stock: Creditor's Knowledge. No creditor of a corporation who knows when he becomes such that its shares of stock have been issued to its subscribers without payment of money or money's worth can enforce his claim, upon default of payment by the corporation, against such stockholders to the extent of their indebtedness for such stock; but where the testimony as to the creditor's knowledge is conflicting and does not preponderate against him, the rule is no defense to his claim.

5. ———: ———: Imputed Knowledge: Purchase of Stock After Credit Given. The purchase of the corporation's bonds carrying a bonus of common stock, made after the company had made the contract out of which the purchaser's claim arises, does not impute to such purchaser knowledge that the stock previously issued to subscribers had not been paid for in money or money's worth, nor does it tend to negative his reliance upon the presumption that the corporation had been legally organized and its stock paid for at the time of his prior contract with it.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

Scott v. Luehrmann.

REVERSED AND REMANDED.

*Kinealy & Kinealy* for appellants.

(1) A creditor who has obtained a judgment against a corporation and a return of execution *nulla bona* may then proceed against the holders of unpaid stock. 10 Cyc. 725, 731; Shickle v. Watts, 94 Mo. 410; Meyer v. Min. & Mill. Co., 192 Mo. 162. (2) The judgment against the corporation is conclusive on the stockholder. Nichols v. Stevens, 123 Mo. 96; Johnson v. Stebbins-Thompson Realty Co., 177 Mo. 581. (3) If the holder of the stock be an assignee thereof and took it with notice that it had been paid up in property, then he takes it subject to the right of a creditor to have the value of the property investigated, and if such value be not equal to the amount of the capital stock, then the holder of the stock is liable to the creditor. Meyer v. Min. & Mill. Co., 192 Mo. 162. (4) To defend, by way of estoppel, against the claim of the creditor, it must be shown that he had actual knowledge that the stock was not fully paid. Rogers v. Stag Min. Co., 185 Mo. App. 659; Construction Co. v. Western, 153 Mo. App. 185. (5) The mere fact that the creditor may also be a stockholder does not prevent him from pursuing his remedy as a creditor. Schaefer v. Brewing Co., 4 Mo. App. 115; Guerney v. Moore, 131 Mo. 650; Meyer v. Min. & Mill. Co., 192 Mo. 162. (6) Under our procedure the courts can only consider controversies as concrete cases made by the pleadings. State ex rel. v. Muench, 217 Mo. 124; Moormeister v. Hannibal, 180 Mo. App. 717. (7) If the stockholder, when sued by a creditor, admits that he is such stockholder, he can file a cross-bill bringing in all other stockholders for contribution. Hatch v. Dana, 101 U. S. 205; Young v. Farwell, 139 Ill. 326; Martin v. Southern Salena Land Co., 94 Va. 28; Brundage v. Monumental Co., 12 Ore. 322. (8) A defendant's defenses and positions in a case must be consistent. Dickey v. Porter, 203 Mo. 1; Bell v. Campbell, 123 Mo. 2; Brown

v. Emmerson, 155 Mo. App. 459; Shelby v. Sheppard, 145 Mo. App. 470. (9) It was defendants' duty in their answer to set forth their contention as to the construction or legal effect of Underwriting Agreement, which they did. Reilly v. Cullen, 159 Mo. 322; Anderson v. Gaines, 156 Mo. 664; Estes v. Shoe Co., 155 Mo. 577. (10) Defendants are bound by the allegations of their answer. Oglesby v. Mo. Pac. Ry. Co., 150 Mo. 137; Knoop v. Kelsey, 102 Mo. 291; Weil v. Posten, 77 Mo. 284; Bruce v. Sims, 34 Mo. 246. (11) An assignment of a judgment to one not a party thereto does not extinguish the judgment. Not even where the assignee is a surety for the judgment debtor. 23 Cyc. 1475; Bardon v. Savage, 1 Mo. 560; Bradley v. Heffernan, 156 Mo. 653; Prather v. Hairgrove, 214 Mo. 142; Thompson v. Longan, 42 Mo. App. 146; Marshall v. Meyer, 96 Mo. App. 643; Van Hoose v. Machinery, 169 Mo. App. 54. (12) The liability of stockholders to corporate creditors does not make the stockholders sureties for each other. Guerney v. Moore, 131 Mo. 650. (13) The assignee of the subject-matter of a pending suit gets all the rights of his assignor. R. S. 1909, sec. 1924; United Shoe Mach. Co. v. Ramlose, 210 Mo. 631; Hendricks v. Callaway, 211 Mo. 536; Van Syckel v. Beam, 110 Mo. 589; Craig v. Zimmerman, 87 Mo. 475; Langford v. Varner, 65 Mo. App. 370; Bank v. Stanley, 46 Mo. App. 441; Craig's Appeal, 92 Mo. 396. (14) The judgment against the delinquent stockholder should be for the amount due on his stock with interest from institution of suit. Millisack v. Moore, 76 Mo. App. 528.

*Henry Kortjohn, Jr.* for respondents.

(1) Stockholders who have knowledge and participate in the issuance of stock upon payment of less than its par value cannot afterwards complain of the transaction either in their own behalf as stockholders or creditors. Richard Halon Millinery Co. v. Miss. Valley Trust Co., 251 Mo. 587; Meyer v. Mining & Milling Co.,

192 Mo. 162, 191; Woolfolk v. January, 131 Mo. 620; Berry v. Rood, 168 Mo. 333; Coleman v. Hagey, 252 Mo. 146; Biggs v. Westen, 248 Mo. 345. (2) A creditor of a corporation, who becomes such with knowledge that its stock was neither paid nor to be paid, but was issued merely as a bonus for the subscription and payment of other stock, cannot enforce his claim against the corporation by compelling its shareholders to pay to the corporation, its trustee or other representative, any portion of the stock so donated. Meyer v. Mining & Milling Co., 192 Mo. 162; Trust Company v. McMillan,. 188 Mo. 567; Shields v. Hobart, 172 Mo. 491; Berry v. Rood, 168 Mo. 316; Woolfolk v. January, 131 Mo. 637; Bonet Construction Co. v. Central Amusement Co., 153 Mo. App. 195. (3) The defendants in their answer set forth all of the facts and their belief that under the facts they were not stockholders, and, further, by way of cross-bill, that if the court found them to be stockholders it issue summons for the other stockholders who were not before the court, and the defendants prayed the court that all in the same status be forced to contribution. There was no special demurrer or motion of any sort filed against this pleading before the trial. Any inconsistency in the pleading, if there be such, is therefore waived. Hendricks v. Galloway, 211 Mo. 536; State ex rel. Bristol v. Walbridge, 69 Mo. 657. (4) This is an equity proceeding, and if under the law contribution ought to be had among the stockholders a court of equity will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing full, adequate and complete justice between the parties. Real Estate Savings Institution v. Collonius, 63 Mo. 295. (5) All of the persons who subscribed for second mortgage bonds and received bonus stock, the way the present plaintiffs and the defendants did, are in the same *status*. As to these persons the judgment of the original plaintiffs is satisfied, although never satisfied of record. If there be no claim on account of the purchase of the judgment, it is only through the doctrine

of contribution, which doctrine is the result of general equity, based on the ground of equality of burden and benefit. Van Petton v. Richardson, 68 Mo. 379. (6) The defendant's amended answer pleads equitable set off, and asks for recoupment against the assignees of the judgment, who are now the real parties plaintiff, represented by the nominal plaintiffs. This is a proper counterclaim in equity. Grand Lodge of Masons v. Knox, 20 Mo. 435, 436; Trust and Banking Co. v. Dierks Lumber Co., 133 Mo. App. 39. (7) After the assignment of the judgment by plaintiffs and the payment to them of $77,761.36 by the fellows stockholders of these defendants, the judgment creditor was satisfied, and as to him the judgment was paid. If the defendants, fellow stockholders as assignees, had any legal right thereafter to continue the cause of action, it was only for contribution against these defendants. This, even if they chose to continue it in the original plaintiff's name. Trust & Banking Co. v. Dierks Lumber Co., 133 Mo. App. 39. (8) Under our statute, it is the assignee who may have his name substituted as plaintiff. The original plaintiff has no further interest in the suit. The assignee is the plaintiff after assignment, whether he has his name substituted or not and any equity against him may be set up. R. S. 1909, sec. 1924; R. S. 1899, sec. 764.

BOND, C. J.—The petition alleges that plaintiffs recovered judgment against the Parkview Realty & Improvement Company on July 8, 1912, for $117,303.35. This judgment was the consummation of litigation between said parties, heard twice on appeal in this court (241 Mo. 112; 255 Mo. 76).

The petition further states that returns *nulla bona* were made on two executions under said judgment; that the corporate defendant in said judgment is wholly insolvent, except the amount due to it from subscribers to its stock who have obtained the same without payment therefor The plan of the incorporation of the

company is then set out, showing that it gave to each purchaser of its bonds a certain proportion of common stock as a bonus; that its whole capitalization was based upon the taking over of said real estate, heavily incumbered, at a fictitious valuation over and above what was paid for it by the purchasing agents; that this device of the corporation was carried out by the issuance of $5,500,000, par value, of shares paid for by real estate mortgaged for $3,500,000; that said mortgage represented the funds used in the acquisition of the land and the extinguishment of all prior incumbrances thereon.

The petition further alleges that the defendants in this case were allotted shares of stock for which they owed the corporation, in the aggregate, $52,500, and for which they paid nothing. Plaintiffs prayed for an accounting by defendants and the application of this amount to the payment of their judgment and costs.

Defendants answered by a general denial and that plaintiffs had knowledge of the method of capitalization of the corporation; that plaintiffs themselves had purchased a·bond of said corporation and knew its capital stock had not been paid in money; that plaintiffs had brought six suits to enforce their judgment, when one would have been sufficient, and had not made necessary parties to the present action; that if defendants are held liable by the court, then others similarly situated are liable and should be made parties; that plaintiffs have no longer any personal interest in said suit, but are representing a committee or syndicate who have agreed to pay plaintiffs a part or all of their judgment and costs; that if defendants are held liable, then all the persons so agreeing with plaintiffs should be held liable also and brought into prorate.

The reply was a general denial.

Upon a hearing the trial court, sitting as a chancellor, dismissed plaintiffs' bill, from which they have duly appealed.

I. The substance of the allegations of plaintiffs' petition were sustained by the evidence adduced on the hearing. The petition stated a cause of action, hence plaintiffs are entitled to recover unless some one (or more) of the affirmative defenses set up in the answer is sustained by the preponderance of the evidence, and is also sufficient in law to prevent a recovery.

After the obtention of their judgment, the plaintiffs began suits, similar to the present, to enforce it against the stockholders of the defendant corporation, who were indebted for stock allotted to them. Thereupon a number of stockholders entered into an agreement to put $160,000 in the hands of the Mercantile Trust Company as trustee, to be held for the purpose of defending the suits instituted by plaintiffs and discharging any judgments that might be recovered. A committee of the body thus formed purchased the judgment which plaintiffs sued on and took an assignment in blank of the same, on December 16, 1914. No substitution of parties was made and the cause proceeded in the name of the original plaintiffs. [R. S. 1909, sec. 1924.]

In speaking of this assignment Mr. Collins, after having produced the assignment and the agreement under which the money was put in the hands of the trustee for the purposes expressed therein, said: "Part of the money deposited was paid over to the Scotts in consideration of the assignment of the judgment for the benefit of the parties who subscribed to this contract. After this agreement was executed, a committee consisting of Mr. Wright, Mr. Skinner and Mr. Carter, bought from the plaintiffs their judgment and got an assignment of it. There never was any intention and it was never contemplated in any way that there was a satisfaction of the judgment, because the very purpose of the agreement was to give these parties who had provided the fund the right to enforce contribution from the others who had refused to come in."

This assignment of the judgment (after the bring-ing of the present suit, to other stockholders of the de-fendant corporation who were subject to suit by any creditor of the insolvent corporation), was brought home to the actual knowledge of the defendants in this action, who did not, however, by appropriate pleadings in the way of counterclaim or cross-bill, bring in any other stockholders whom they could require to contribute; neither did they pray for the substitution of the pur-chasers of the assigned judgment, to the end that there might be an equitable accounting and contribution on the part of such purchasers in the payment of this established indebtedness against the corporation. [Hatch v. Dana, 101 U. S. 205.] In this state of the pleadings the only question, therefore, is whether or not the assign-ment of the judgment in the circumstances shown on the trial, precluded the original plaintiffs from further prosecution of this action. Under our statute it did not. Hence, whatever may be the equities *inter sese* between defendants and the plaintiffs who have ac-quired the beneficial ownership of the judgment sued on as to any accounting or contributing among them-selves, no such matters were brought within the cogni-zance of the court on the present trial and were not dealt with or attempted to be adjudged. Having been left out of the pleadings, they were necessarily ex-cluded from the view of the court in rendering its decree. [Wilson v. Wilson, 255 Mo. l. c. 537, 538, et cases cited.]

Defendants, however, invoke the rule of law that no creditor of a corporation who knows when he becomes such, that its shares of stock have been issued to the subscribers therefor without payment of money or money's worth, can enforce his claim (upon default of payment by the corporation) against such shareholders to the extent of their indebtedness for the stock issued to them. There is no question as to the correctness of this equitable principle. [Biggs v. Westen, 248 Mo. 345.] However, as to this charge of knowledge, the

testimony of the Scotts was, in effect, that they knew nothing whatever of the plan of the capitalization of the defendant corporation. One of them, among other things, said: "I made no inquiry as to the ability of the company to pay for the work under the contract, because I knew the company was composed of the Lincoln Trust Company group, and that Mr. Pitzman, was handling the job, and that was to me sufficient guaranty that it was all right."

The witness relied on by defendants to bring home knowledge to plaintiffs was Mr. Pitzman, who advertised the bid for grading work and who received plaintiffs' bid, to whom the contract was let on February 12, 1902. This witness said: "I don't know whether the plaintiffs asked me anything with reference to the manner in which the Parkview Company had been organized and the way its capital stock was paid up, but I make it a rule as a general thing to tell every contractor who bids whether the parties letting the work are responsible or not and how they are organized. I think I did this in this instance. It is many years ago, but as far as I recollect, I did tell Ed Scott. I think I told him how the company was organized. I will not say positively that I remember saying anything to him about that." He stated further that he told Mr. Scott that the property had been bought at a high price and that he had before him on his table one of the agreements for the subscriptions for the second mortgage bonds when Mr. Scott came into the office, adding further: "I explained to him that I did not think that there would be any doubt about the money being ready for the grading contract, because of the responsibility of the parties that signed the second mortgage bonds subscriptions. I cannot tell whether I showed him that paper or not."

The contrary tendency of the statements of these witnesses presented, at most, an issue of fact, as to which we do not find a preponderance in favor of the affirmative defense of knowledge on the part of plaintiffs

of the scheme of capitalization devised by the corporation.

Neither does the purchase of one of the company's bonds carrying a bonus of common stock, impute knowledge to the Scotts, for the evidence is clear that this was made *after* the corporation had made the grading contract creating an indebtedness on its part to the Scotts. In that event the Scotts would not be prejudiced in the enforcement of any indebtedness accruing under their prior contract; for such subsequent knowledge does not tend to negative their reliance upon the presumption that the corporation was legally organized and its shares of stock had been issued for money or money's worth at the time of its prior contract with them. [Rogers v. Mining Co., 185 Mo. App. l. c. 675; Guerney v. Moore, 131 Mo. l. c. 671; Coleman v. Hagey, 252 Mo. l. c. 146; Trust Co. v. McMillan, 188 Mo. l. c. 567.]

It is an elementary rule that courts of equity are powerless to administer redress beyond the legitimate scope of the pleadings of the parties. [Newham v. Kenton, 79 Mo. 382; Whiting v. Land & Sheep Co., 265 Mo. l. c. 382 et cases cited.] In the present case the defendants wholly failed, either by allegations in their pleadings, or in any other mode, to invoke or secure redress as against the beneficial owners of the judgment or any other stockholders occupying a similar *status* with the defendants. Upon the issue joined and the proof adduced at the hearing, the decree of the trial court dismissing plaintiffs' suit was manifestly erroneous.

It is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

PER CURIAM:—The foregoing opinion of BOND, C. J., in Division is adopted as the opinion of Court in Banc. All concur (*Faris, J.,* in result) except *Graves, J.,* who dissents.