EDWARD J. SCOTT and JOHN R. SCOTT, Appellants, v. R. L. BARTON et al.

Division Two, December 15, 1920.

1. **CORPORATION: Judgment: Nulla Bona Execution: Liability of Stockholders.** A creditor who has obtained judgment against a corporation, may, upon the return of a *nulla bona* execution, proceed against the holders of unpaid stock to enforce payment of such judgment. And in such case, the judgment against the corporation is conclusive on such stockholders.

2. ———: **Unpaid Stock: Estoppel: Creditor's Knowledge.** A creditor of a corporation who knew when he extended credit to it that its shares of stock had been issued to the subscribers therefor without payment of money or money's worth, cannot enforce his claim against the stockholders to the extent of the stock issued to them; therefore, the question of the creditor's knowledge is a vital issue where he, after a return of a *nulla bona* execution under a judgment against the corporation, seeks by separate suit against the holders of unpaid stock to enforce payment of his judgment.

3. **EQUITY: Deference to Chancellor.** An equity suit is tried *de novo* in the appellate court, and while such court will defer to the finding of the trial chancellor on a question of fact and consider such findings as persuasive, it will not allow such finding to be binding, unless the minds of the appellate court run with the chancellor on the facts, or unless the facts are conflicting and close and a yielding to his judgment seems necessary because of his better position to judge of the credibility of the witnesses.

4. **CORPORATION: Unpaid Stock: Estoppel: Creditor's Knowledge: Burden of Proof.** The burden of proving that the creditor of a corporation, in a suit against the holders of unpaid stock to enforce payment of his judgment against the company, knew, at the time he extended credit to it, that its shares of stock had been issued to the subscribers without payment of money or money's worth, is on the stockholders; and in this case, it is *held*, as it was on

the former appeal, that the evidence does not establish such knowledge by the creditor, and the court refuses to accept the finding of the trial chancellor that it does.

5. ————: ————: **Suit Against Stockholders: Multiplicity of Suits: Contribution.** In a suit against holders of unpaid stock to enforce payment of a judgment against the corporation, the creditor is not required to sue all such stockholders, and is not to be charged with splitting his cause of action, or with needlessly bringing a multiplicity of suits, if he brings different suits against different stockholders. But a defendant in any such suit, if he desires, can bring in all the interested parties, so that contribution may be adjudged among them; but the responsibility to pursue this course rests upon the interested stockholders when sued, and not upon the creditor of the corporation.

6. **FORMER ADJUDICATION: Retrial.** A complete adjudication on former appeal that plaintiffs had not sold their interest in their judgment against a corporation, to enforce payment of which they bring the present suit against the holders of unpaid stock, precludes a further consideration of the question.

7. **CORPORATION: Stock Liability: Bonus Stock.** The fact that subscribers received as a bonus three and one-half shares of common stock for one share of the company's second mortgage bonds establishes their stock liability, when sued as holders of unpaid stock by a creditor of the corporation to enforce payment of his judgment against it.

8. ————: ————: **Judgment.** Plaintiffs as creditors had obtained judgment against a corporation for $117,303.35, and execution was issued and returned *nulla bona*. Alleging these facts, and that the company was insolvent, except for the amount due it from subscribers to its stock who had obtained it without paying therefor, plaintiffs brought this suit against the holders of unpaid stock to enforce payment of their judgment, naming such holders and the amount due to the corporation from each. The judgment of the trial court for defendants is reversed, and the cause remanded with directions that defendants be adjudged to account for the amounts due from them respectively on account of unpaid stock to said corporation, and to pay the judgment against the company, with interest and costs; and if any defendant is insolvent, that the other defendants be adjudged to make up such deficiency in proportion to their respective liabilities.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields*, Judge.

REVERSED AND REMANDED (*with directions*).

*Kinealy & Kinealy* for appellants.

(1) A creditor who has obtained a judgment against a corporation and a return of execution *nulla bona* may then proceed against the holders of unpaid stock. 10 Cyc. 725 and 731, tit. Corporations; Shickle v. Watts, 94 Mo. 410; Meyer v. Min. & Mill. Co., 192 Mo. 162. (2) The judgment against the corporation is conclusive on the stockholder. Nichols v. Stevens, 123 Mo. 96; Johnson v. Stebbins-Thompson Ry. Co., 177 Mo. 581. (3) If the holder of the stock be an assignee thereof and took it with notice that it had been paid up in property, then he takes it subject to the right of a creditor to have the value of the property investigated, and if such value be not equal to the amount of the capital stock, then 'the holder of the stock is liable to the creditor. Meyer v. Min. & Mill. Co., 192 Mo. 162. (4) To defend, by way of estoppel, against the claim of the creditor, it must be shown that he had actual knowledge that the stock was not fully paid. Rogers v. Stag Min. Co., 185 Mo. App. 659; Construction Co. v. Western, 153 Mo. App. 185. (5) The mere fact that the creditor may also be a stockholder does not prevent him from pursuing his remedy as a creditor. Schaefer v. Brewing Co., 4 Mo. App. 115; Guernsey v. Moore, 131 Mo. 650; Meyer v. Min. & Mill. Co., 192 Mo. 162. (6) Under our procedure the courts can only consider controversies as concrete cases made by' the pleadings. State ex rel. v. Muench, 217 Mo. 124; Moormeister v. Hannibal, 180 Mo. App. 717. (7) If the stockholder, when sued by a creditor, admits that he is such stockholder, he can file a cross-bill bringing in all other stockholders for contribution. Hatch v. Dana, 101 U. S. 205; Young v. Farwell, 139 Ill. 326; Martin v. Land Co., 94 Va. 28; Brundage v. Monumental Co., 12 Ore. 322. (8) Defendants are bound by the allegations of their answer. Oglesby v. Railroad, 150 Mo. 137; Knopp v. Kelsey, 102 Mo. 291; Weil v. Posten, 77 Mo. 284; Bruce v. Sims, 34 Mo. 246. (9) An assignment of a judgment to one not a party thereto does not extin-

guish the judgment. Not even where the assignee is a surety for the judgment debtor. 23 Cyc. 1475; Bardon v. Savage, 1 Mo. 560; Bradley v. Heffernan, 156 Mo. 653; Prather v. Hairgrove, 214 Mo. 142; Thompson v. Longan, 42 Mo. App. 146; Marshall v. Meyer, 96 Mo. App. 643; Vas Hoose v. Machinery, 169 Mo. App. 54. (10) The liability of stockholders to corporate creditors does not make the stockholders sureties for each other. Guernsey v. Moore, 131 Mo. 650. (11) The assignee of the subject-matter of a pending suit gets all the rights of his assignor. R. S. 1909, sec. 1924; United Shoe Mach. Co. v. Ramlose, 210 Mo. 631; Hendricks v. Callaway, 211 Mo. 536; Van Syckel v. Beam, 110 Mo. 589; Craig v. Zimmerman, 87 Mo. 475; Langford v. Varner, 65 Mo. App. 370; Bank v. Stanley, 46 Mo. App. 441; Craig's Appeal, 92 Mo. 396. (12) All the questions involved in this case having recently been under review of Court in Banc, are concluded here against respondents. Scott v. Luehrmann, 213 S. W. 855.

*Muench, Walther & Muench* for respondents.

(1) The question whether Scott & Sons were informed of the method by which the Parkview Company was promoted and financed was one of fact, and having been determined by the court below, on ample evidence contained in the record, that finding should be deferred to in this court, in view of the superior opportunity of that court to observe the witnesses and adjudge the weight and credibility of their evidence. Yeager v. Yeager, 185 S. W. 744; Thurmond v. Thurmond, 186 S. W. 1; Clark v. Clark, 143 Mo. App. 350; Hull v. Hull, 168 Mo. App. 220; Thiesen v. Thiesen, 167 Mo. App. 264; Griesedieck v. Griesdieck, 56 Mo. App. 98; Schierstein v. Schierstein, 68 Mo. App. 205; Wald v. Wald, 119 Mo. App. 347; Hunnell v. Zinn, 184 S. W. 1154; Creamer v. Bivert, 214 Mo. 479. (2) Where one deals with a corporation, knowing its stock to have been paid up in property of an unascertained value, and as "full paid," he can no more assail the consideration upon

which such stock was issued than can the corporation it-self; and especially is this true of one who was a party to the scheme by which stock was issued for an alleged inadequate consideration. Woolfolk v. January, 131 Mo. 637; Berry v. Rood, 168 Mo. 316; Shields v. Hobart, 172 Mo. 491; Trust Co. v. McMillan, 188 Mo. 567; Meyer v. Milling Co., 192 Mo. 162; Hanlon v. Trust Co., 251 Mo. 588; Biggs v. Western, 248 Mo. 344; Bank of Ft. Madison v. Alden, 139 U. S. 372; Cunningham v. Holley, Co., 121 Fed. 720; Continental, etc., Co. v. Cook, 152 Fed. 652. (3) The Syndicate contract, expressly joined in by plaintiffs Scott, having provided, in so many words, that '' no member of the Syndicate shall be liable beyond the amount of his subscription,'' plaintiffs are now estopped from gainsaying that covenant, and seeking to make their fellow members pay for three and one-half times that amount. Herman on Estoppel, sec. 575; Bigelow on Estoppel (6 Ed.)', p. 495. (4) The contention that the Scotts did not, at the time, know the value of the real estate equities which were turned over to the Parkview Company, will not avail. Not only did they fully examine this property before they either undertook to do the grading thereof or joined the Syndicate, but they had the same sources of information as all others, and cannot plead deliberate ignorance. "Knowledge is that which is, or may be, known." Meier v. Blume, 80 Mo. 184; Wade on Notice, sec. 11. (5) The original plaintiffs in these cases having been paid the agreed amount upon their judgment by parties of at least equal (if not greater) liability with these defendants, the judgment became extinct, unless the purchasers have some superior equity which entitles them to continue its vitality. Franklin v. Menown, 10 Mo. App. 574; Menown v. Crawford, Ibid. 575; Thayer v. Union Tool Co., 4 Gray (Mass.) 75; Hull v. Sherwood, 59 Mo. 172; McDaniel v. Lee, 37 Mo. 204; Johnson to Use, v. Greve, 60 Mo. App. 170. (6) There is not a word of evidence in the present case that, despite this payment to the Scotts by other syndicate members, this judgment should be kept alive.

The only reference to the matter is found in the "Defense-Fund Agreement" of September 24, 1914, wherein, among themselves, the subscribers to the agreement reserve the right to seek contribution in equity against other subscribers to the syndicate—not to continue an action in the name of a creditor, praying for judgments more than $400,000 in excess of the price paid by them for the original Scott judgment. This signifies a radical difference between the cases at bar and the case of Scott v. Luehrmann, 213 S. W. 855. But even without such difference, the rule in this State has always been that the payment of judgment by persons of equal, or greater, responsibility with remaining judgment debtors cannot recover from the latter more than a just contribution. Campbell v. Pope, 96 Mo. 475; Milling Co. v. Sugg, 83 Mo. 476; cases last above. (7) This being an equitable proceeding, the original plaintiffs, and, *a fortiori,* their present substitutes, should do equity. It is not equitable to bring a large number of different suits against many defendants, in the same jurisdiction, upon the causes, if any, identical in all, thus multiplying cost and creating harassment; and in this very cause the corporations (the Trust Companies and the Parkview Company), should have been made parties in order to have their several liabilities determined. Deeming the majority opinion in the Luehrmann case at variance with the following authorities, we respectfully urge a re-examination, by this court, of the point involved. Lucke v. Treadway, 45 Mo. App. 515; Patterson v. Lynde, 112 Ill. 205; Swan Co. v. Frank, 148 U. S. 603; First Natl. Bank v. Smith, 6 Fed. 215; Elkhart v. Guar. Co., 87 Fed. 252; Witherbee v. Baker, 35 N. J. Eq. 507; Coleman v. White, 14, Wis. 700; Morawetz on Corp. sec. 625; 20 Ency Pl. & Pr. 724; Continental Adj. Co. v. Cook, 152 Fed. 652.

MOZLEY, C.—There are two of these cases, Nos. 20157 and 20158, which have been consolidated by the parties, and only one, No. 20158, has been abstracted

and briefed. What is said in this case applies also to the other.

The action is in equity and seeks to enforce the collection from defendants of a judgment in favor of plaintiffs of $117,303.35. Plaintiff's bill was dismissed by the court below "without prejudice" and plaintiffs duly appealed to this court.

The case of Scott v. Luehrmann, 278 Mo. 638, decided by Court in Banc, adjudicates all of the points in issue here. That case was dismissed by the lower court, appealed here, and reversed and remanded to the lower court with directions to proceed in conformity with said opinion. Since the facts of that case and of the instant case are the same with the exception below noted, we deem them important to the present case and therefore, set them out, as follows:

"The consummation between the parties hereto was a judgment in favor of plaintiffs for $117,303.35 and against defendants. The petition avers that returns *nulla bona* were made on two executions; that the corporate defendant (Parkview Realty & Improvement Co.) is wholly insolvent, except the amount due it from subscribers to its stock who have obtained same without paying therefor. The plan of the incorporation of the company is then set out, showing that it gave to each purchaser of its second mortgage bonds a certain proportion of common stock (3½ for 1). That its whole capitalization is based on taking over about 300 acres of real estate heavily encumbered, at a fictitious value over and above what was paid for it by the purchasing agents; that this device of the corporation was carried out by the issuance of $5,500,000, par value, of shares paid for by real estate mortgage for $3,500,000, that said mortgage represented the funds in the acquisition of the lands and the extinguishment of all prior incumbrances thereon.

"The defendants answered by a general denial, and that plaintiffs had knowledge of the method of capitalization and had themselves purchased some bonds of

285 Mo.—28

said corporation and knew its capital stock had not been paid for in money; that plaintiffs had brought six suits when one would have been sufficient had all necessary parties been joined in the action. The reply was a general denial.''

Plaintiffs have pleaded in this case, in addition to what was pleaded in the other, the names and respective amounts due and unpaid to the corporation on stock purchased by its stockholders, viz: R. L. Barton, $17,500; H. C. Zelle, $87,500; C. B. Smith, $3,500; George F. Haid, $10,500; W. C. Waldeck, $17,500; Emanuel Waldeck, $3,500; C. G. Waldeck, $7,000; Ernest B. Filsinger, $3,500; A. A. B. Woerheide, $437,500; Julius C. Garrell, $175,000; Charles Hamilton, $35,000; O. J. McCawley, $17,500; H. E. Sprague, $7,000; Nannie B. Sherlock, $3,500; George P. Potee, $17,500; E. H. Exrler, $87,500; A. L. Abbott, $3,500; Joseph M. Brown, $17,500; F. W. Wrieden, $17,500; G. M. Telle, $17,500; George A. Held, $35,000; G. F. A. Breuggemann, $7,000; Rebecca Harris, $10,500; William E. Hall, $35,000; Ben Altheimer, $87,500; Ada Blanch Blake, $87,500; O. E. Forster, $29,166; and H. C. Stifel, $29,166. These constitute the defendants sued herein.

The facts will be further referred to when deemed necessary.

I. A creditor who has obtained judgment against a corporation, upon return of executions *nulla bona,* may proceed against the holders of unpaid stock to enforce the payment of such judgment. [14 C. J. p. 383, par. 505; 10 Cyc. 725-731; Meyer v. Min. & Mill. Co., 192 Mo. 162; County v. Allen, 103 U. S. 498; Richardson v. Green, 133 U. S. 30; Hatch v. Dana, 101 U. S. 205; Shickle v. Watts, 94 Mo. 410.]

*Unpaid Stock: Judgment.*

And the judgment against the corporation is conclusive on the stockholders. [Nichols v. Stevens, 123 Mo. 96; Johnson v. Stebbins-Thompson Co., 177 Mo.

581; 5 R. C. L. p. 949, sec. 429; 24 Cyc. 765, sec. 5; Nave v. Adams, 107 Mo. 414.]

II. There is no doubt that the creditor of a corporation who knew when he became such that its shares of stock had been issued to the subscribers therefor without the payment of money or money's worth, cannot enforce his claim against the shareholders to the extent of their indebtedness for the stock issued to them. The question of plaintiffs' knowledge, therefore, becomes a vital one.

Creditor's Knowledge.

Referring again to the facts in the Scott v. Luehrmann case, supra, we find the question of plaintiff's knowledge of the above facts at the time he became a creditor of the Parkview Realty & Improvement Co. was ruled adversely to respondents' contention that appellants had such knowledge. Mr. Pitzman, chief engineer in charge of the work and who is alleged to have put plaintiffs in possession of the above facts, did not testify in the instant case, although he did testify in the Luehrmann case, and it was ruled therein that his testimony was insufficient for the purpose of establishing knowledge on the part of the appellants. Respondents offered two witnesses in the case in hand, Otto Schmitz and Edward J. Brose. Schmitz testified as follows:

"My occupation is that of civil engineer and surveyor. Have been connected with Pitzman Company of surveyors and engineers since its organization in 1893, and am its vice-president. I have known the Scotts for about fifteen years. I was familiar with the Parkview project and the grading contracts. My desk at the office was next to that of Mr. Pitzman, who was the chief engineer in charge of the work and who conferred with the several bidders on the same. I distinctly remember Mr. Edward Scott coming into the office before the grading contract was let, and having a conversation with Mr. Pitzman about the contract and the way in which the Parkview Company was organized. Mr.

Pitzman had on his desk a pamphlet containing the printed syndicate agreement, and he used this in explaining to Mr. Scott the manner in which the company was financed, speaking of bonds and shares to be issued. While I cannot now give the words that were spoken, I know it was about underwriting bonds and stocks.''

Brose testified as follows:

''I was connected with the Pitzman Company as a surveyor since 1895. I knew both Edward and John Scott, and remembered that Edward Scott came to Mr. Pitzman's office several times before the letting of the contract for grading the Parkview tract. I remember hearing Mr. Pitzman, on one occasion, before they had the contract, talk to Edward Scott about the organization of the Parkview Company, and the manner in which the bonds and shares were to be issued, but it is too long ago for me to give the exact conversation now.''

John R. Scott, a member of the firm of Edward J. Scott & Sons, testified as follows:

''The first time the matter of the financial responsibility of the Parkview Company or the question of its bonds or stocks came up for discussion to my knowledge, was in January, 1904, when the question of making a settlement with the company was under consideration. At that time I and my attorney went to Mr. Rule, the secretary of the company, and told him he wanted to know about how the capital stock of the company had been paid up. Mr. Rule refused to give us any information about it or to discuss the matter. I never saw this underwriting agreement which has been read in evidence before we brought this suit against the stockholders of the Parkview Company.''

Edward J. Scott testified that ''he was a member of said firm, and made the financial arrangements respecting the contract for said Parkview Company grading on February 12, 1902; that he had no knowledge as to the financial condition of the Parkview Company or the way it was organized; that he had never seen said underwriting agreement and did not see it until

these stock suits were brought.   Mr. Pitzman did not tell me anything about the organization of the Parkview Company or its stocks or bonds or financial condition prior to the signing of that contract.   No such question ever came up until after the work was completed, nor did I have any idea of the value of the property out in that neighborhood.''

The foregoing presented a question of fact for the chancellor below to determine, and the burden of proving the affirmative of the proposition was on respondents who had pleaded it as a defense to the action.

We agree with respondents that this being an equity suit it is to be tried here *de novo,* as held in the case of Gibson v. Shull, 251 Mo. l. c. 485, but the question of how far we will defer to the finding of the chancellor below is quite another matter, as shown by the following on the same page: ''In other words, whilst we look upon the finding in the lower court as persuasive, we do not allow it to be binding, unless our minds run with the chancellor below on the facts, or unless the facts are conflicting and close and we yield to his judgment because of his better position to judge of the credibility of the respective witnesses.''

We must, therefore, resort to the facts to ascertain whether or not appellants, at the time of making the contract to do the grading, had knowledge of how the Parkview Company was organized, its financial condi-tion and how its capital stock had been paid up.

Keeping in view the fact that respondents carried the laboring oar in making this proof by a fair pre-ponderance of all the evidence relating thereto, we think the testimony insufficient to accomplish that end.   It was wholly lacking in definiteness and certainty as to any facts—it was the conclusion of the witnesses.   Under the above authority it does not justify us in following the finding of the chancellor below, and we decline to do so.

III. As to respondents' contention that appellants split their cause of action by bringing more than one suit in which, they say, all matters in dispute could have been adjusted and on account thereof it becomes impossible for the court to adjudge contributions among the interested parties, we cannot agree. Appellants were not compelled to sue all of the interested parties;

Splitting Cause of Action. the obligation was not a joint one; no particular stockholder was liable for the payment of what another stockholder owed, hence appellants could sue such as they desired. Respondents could have, had they so desired, brought in as parties to the action all of the interested parties so that contribution could be adjudged among them, but we think the responsibility to pursue this course rested upon them. [Hatch v. Dana, 101 U. S. 205; Olgilvie v. Ins. Co., 22 Howard, (U. S.) 380; Terry v. Tubman, 92 U. S. 156; Sec. 3004, R. S. 1909; Steam Cutter Co. v. Scott, 157 Mo. 520, l. c. 525; Guerney v. Moore, 131 Mo. 650, l. c. 667; State Savings Assn. v. Kellogg, 63 Mo. 540; Perry v. Turner, 55 Mo. 418.

IV. The contention made by respondents that appellants had sold all their right, title and interest in said judgment prior to bringing the present action has been

Res Adjudicata. adjudicated adversely to said contention in the case of Scott v. Parkview Realty & Improvement Co., 255 Mo. 76. We hold that respondents are precluded from further raising that question.

So, also, respondents contention that appellants became a party to the syndicate agreement and thereafter were bound by its provisions because of the purchase by them of $5,000 worth of second mortgage bonds for which they were to receive $17,500 of face-value common stock of said Parkview Company, has been adjudicated adversely to respondents in said case of Scott v. Luehrmann, 278 Mo. 638. We rule the contention against respondents.

V. A stock liability upon the part of respondents is fairly established by the fact that they acquired $3,-

500,000 of the common stock of the corporation for $1,-
000,00 of second mortgage bonds; that is,
**Bonus.**　three and one-half shares of common stock
were given for one share of said mortgage bonds—
clearly a bonus for which the corporation received
nothing. This plan was to aid the sale of said second
mortgage bonds [Scott v. Realty & Imp. Company,
255 Mo. l. c. 93-94.]

VI. The opinion in the Luehrmann case, supra,
is alleged to be in conflict with a number of cases decid-
ed by this court and cited in respondent's brief. If
it is, which we do not decide, it is the latest ex-
**Stare**
**Decisis.**　pression of our Court in Banc upon the ques-
tions therein discussed and we think they were
correctly decided.

VII. We have given attention to other matters
argued in the briefs filed, but we think what is herein
said sufficiently covers the case.

We think the petition states a cause of action and
that the testimony is ample to support a judgment and
decree in favor of appellants.

It results, therefore, that the decree and judgment
of the lower court will be reversed and remanded with
directions that said respondents be adjudged to account
for the amounts due by them respectively on account of
unpaid stock of said Parkview Realty & Improvement
Company, and that they be adjudged, ordered and de-
creed to pay appellants said judgment, with interest
and costs; and if any defendant be insolvent or without
sufficient property subject to execution out of which he
ought to pay, that the other defendants be adjudged,
ordered and decreed to make up such deficiency in ac-
cordance with their respective liabilities.

It is so ordered. *White, C.,* concurs; *Railey, C.,*
not sitting.

PER CURIAM:—The foregoing opinion of Mozley,
C., is hereby adopted as the opinion of the court. All
of the judges concur.