HAMILTON–BROWN SHOE COMPANY v. SAXEY *et al.*, Appellants.

Division One, November 26, 1895.

1. **Equity**: INJUNCTION: "STRIKE." A court of equity may interfere by injunction to prevent persons from attempting by intimidation, threats of violence, and other unlawful means, to force employees to quit work and join a "strike."

2. ———: ———. While a court of equity will never interfere by injunction simply for the purpose of preventing a crime, it may enjoin acts threatening irreparable injury to property rights, notwithstanding such acts may also be in violation of the criminal law.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*John F. McDermott* for appellants.

(1) The plaintiff's petition is in the nature of an information in a criminal case. *State v. Uhrig*, 14 Mo. App. 413; *Life Ass'n v. Boogher*, 3 Mo. App. 173; *Flint v. Hutchinson Smoke Co.*, 110 Mo. 500. (2) The plaintiff's petition is in the nature of an information in a criminal case, and, being such, violates defendant's constitutional rights to trial by jury. Section 28 of article 2 of constitution provides: "The right of trial by jury, as heretofore enjoyed, shall remain inviolate." *State v. Uhrig*, 14 Mo. App. 413; *Life Ass'n v. Boogher*, 3 Mo. App. 173; *Flint v. Hutchinson Smoke Co.*, 110 Mo. 500; *Cable Co. v. Kansas City*, 29 Mo. App. 89. (3) Jurisdiction of equity must not be extended to restraint of crime. *State v. Uhrig*, 14 Mo. App. 413; *Life Ass'n v. Boogher*, 3 Mo. App. 173; *Cable Co. v.*

*Kansas City*, 29 Mo. App. 89; *Flint v. Hutchinson Smoke Co.*, 110 Mo. 500. (4) There is a complete and adequate remedy at law under section 3783, Revised Statutes of Missouri, 1889. (5) This proceeding is in violation of the defendants' constitutional rights as set forth in section 12 of article 2, constitution of Missouri, which provides: "That no person shall be proceeded against criminally otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger; in all other cases offenses shall be prosecuted criminally by indictment or information as concurrent remedies." (6) The defendants' right to a speedy public trial by an impartial jury of the country is invaded. See section 22 of article 2 of constitution of Missouri, which provides that: "In criminal prosecution the accused shall have the right to appear in person and by counsel to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face, to have process to compel the attendance of witnesses in his behalf at a speedy public trial by an impartial jury of the country." *Life Ass'n v. Boogher*, 3 Mo. App. 173; *State v. Uhrig*, 14 Mo. App. 413; *Flint v. Hutchinson Smoke Co.*, 110 Mo. 500.

*Silas B. Jones* for respondent.

(1) Injunction is the proper remedy to prevent injury to, or destruction of, one's lawful business by the wrongful conduct of others. The general ground for the jurisdiction of equity in such case is, that the injury can not be fully compensated by an action of law. In such case the damages are incapable of any fair estimation. *Railroad v. City of Springfield*, 85 Mo. 674; *Railroad v. Railroad*, 69 Mo. 65; *Glæssner v. Anheuser-Busch Ass'n*, 100 Mo. 508; *Schopp v. St. Louis*, 117 Mo. 131. (2) In such case where the injury

is of a continuous nature, jurisdiction in equity attaches also to prevent the vexation and harassment of continued disturbances, and to prevent a multiplicity of suits. *Carroll v. Campbell*, 108 Mo. 550; *Railroad v. Railroad*, 69 Mo. 65. (3) That a court of equity will not interfere by injunction to restrain the publication of a libel, or the uttering of a slander, injurious to one's business, stands upon peculiar grounds; and is an exception to the general rule, that equity will restrain wrongful acts, which are destructive of a plaintiff's lawful business. *Flint v. Hutchinson Smoke Co.*, 110 Mo. 492; *Gas Co. v. Gas Co.*, 100 Mo. 501. (4) Courts of equity do not interfere by injunction to prevent the commission of crime; but this is subject to the limitation that the contemplated crime is unconnected with violations of private right. *State v. Schweickardt*, 109 Mo. 496; 1 High on Inj., secs. 20, 27. (5) The jurisdiction of equity to restrain wrongful acts destructive of property rights is not ousted, because the acts sought to be restrained may amount to an infraction of the criminal law, and subject the wrongdoer to prosecution and punishment. *Sparhawk v. Railroad*, 54 Pa. St. 401; *People v. St. Louis*, 5 Gilm. 351; 1 High on Inj., sec. 745; *Emperor v. Day*, 3 De Gex, F. & J. 217; *Springhead Spinning Co. v. Riley*, L. R. 6 Eq. Cas. 551; *United States v. Elliott*, 64 Fed. Rep. 27; *Arthur v. Oakes*, 63 Fed. Rep. 310. (6) It is common practice for a court of equity to interfere by injunction in cases of private nuisance injurious to a plaintiff's property or business. In such case the jurisdiction is undoubted; and is founded on the ground of restraining irreparable mischief, or of suppressing oppression and interminable litigation, or of preventing multiplicity of suits. *Hayden v. Tucker*, 37 Mo. 214. (7) A trespass will be enjoined when there is no adequate remedy afforded by an action for damages; and

where the injury is to the manufacturing business of plaintiff, there is no adequate remedy by an action at law for damages. *Turner v. Stewart*, 78 Mo. 480; *Bank v. Kercheval*, 65 Mo. 682. (8) A court of equity will interfere by injunction to restrain a plaintiff's ex-employees and others, who have banded together to injure or destroy plaintiff's business, by the use of threats of violence toward plaintiff's employees, and by putting such employees in fear of bodily harm, and thereby intimidating them, with the purpose of coercing and compelling them to quit the service of plaintiff; and by the use of like means to deter others from entering plaintiff's service. *Springhead Spinning Co. v. Riley*, L. R. 6 Eq. Cas. 551; *Sherry v. Perkins*, 147 Mass. 212; *Murdock v. Walker*, 152 Pa. St. 595; *Brace Bros. v. Evans*, 3 R'y and Corp. L. J. 561; *Gilbert v. Mickle*, 4 Sandf. Ch. 357; *Rogers v. Evarts*, 17 N. Y. Suppl. 264. The federal courts furnish a large number of cases directly in point for this proposition. *Casey v. Typographical Union*, 45 Fed. Rep. 135; *Company v. Miners' Union*, 51 Fed. Rep. 260; *Blindell v. Hagan*, 54 Fed. Rep. 40; *Railroad v. Pa. Co.*, 54 Fed. Rep. 730; *United States v. Elliott*, 62 Fed. Rep. 801; *United States v. Elliott*, 64 Fed. Rep. 27; *Arthur v. Oakes*, 63 Fed. Rep. 310.

PER CURIAM.—This is an appeal from the final judgment of the circuit court of the city of St. Louis, on a demurrer to the plaintiff's petition which is as follows:

"Plaintiff states that it is a corporation duly organized under the laws of the state of Missouri, and is engaged in the manufacture of shoes in the city of St. Louis, Missouri, at Twenty-first and Locust streets, in said city, at which place its factory for the purpose of its said manufacturing business is located; and

plaintiff says that it has in its employ in said manufacturing business in its factory as aforesaid, between eight and nine hundred persons; that all of these persons are at work as operatives in some department or other of said factory; that of these employees as aforesaid a large number, to wit, about two or three hundred, are women and girls, and a large number, to wit, about two or three hundred, are young persons, many of them not being of age, and the balance of said operatives are adult men; that all of these persons are engaged in earning a livelihood at the business of this plaintiff aforesaid; and on the other hand this plaintiff requires the service of these persons to successfully carry on its business of manufacturing shoes as aforesaid.

"Plaintiff further states that all of these employees now in the employ of this plaintiff are desirous of continuing in the service of the plaintiff in its said business as aforesaid.

"Plaintiff further states that ten or fifteen days ago some of its employees, including all the defendants herein, except the defendants Thomas Beaty and P. J. McGarry, went out of the employ of this plaintiff on what is commonly called a strike, claiming to have some grievance against this plaintiff, and which this plaintiff says was without any reasonable ground to rest upon, and thereupon attempted to inaugurate among the employees of this plaintiff what is commonly called a strike; that thereupon the said defendants, lately employees of this plaintiff, together with the defendants Beaty and McGarry, and divers other persons, unlawfully and wrongfully combined and confederated together to terrorize and thereby by intimidation and threats to prevent the other employees of this plaintiff from peaceably or otherwise prosecuting their work in plaintiff's factory; that thereupon all of the defendants hereto, together with their associates and confederates,

whose names are at this moment unknown to this plaintiff, began and have constantly pursued a course of threats of personal violence and intimidation and persuasion for the purpose by means of such intimidation and threats and fear to prevent the other employees of this plaintiff from peaceably or otherwise prosecuting their work in plaintiff's factory; that all of the said defendants thereto, together with divers and sundry other persons, who are their associates and confederates, have constantly hung about the plaintiff's said factory at the place aforesaid; and upon the streets in close proximity for the purpose of picketing the premises of this plaintiff, and by putting the employees of this plaintiff in fear of bodily injury to thereby keep them from continuing their employment with this plaintiff, and also for the purpose of preventing other persons from entering the employ of the plaintiff; and the said defendants and their associates and confederates as a part of their policy of threats and intimidation, and for the purpose of carrying of their unlawful combination, have gone to the home of divers of the employees of this plaintiff at nighttime and then and there undertaken to induce by persuasion and by intimidation and threats the employees of this plaintiff from further prosecuting their work in plaintiff's said factory; and the plaintiff charges that the said defendants therein named, and their associates and confederates, have now been for a number of days, and are now by the use of threats of personal violence, intimidation, and other unlawful means, have been and are now undertaking to prevent the employees of this plaintiff from prosecuting their ordinary work, and are endeavoring to induce them by the unlawful means aforesaid to quit the employment of this plaintiff; and plaintiff says that by reason of the fact that a great many of its employees are women and girls and young persons, that the defend-

ants aforesaid and their associates and confederates have succeeded in exciting in the minds of the plaintiff's said employees, or many of them, fear for their bodily safety to such an extent that they can not happily, as they have a right to do, prosecute their ordinary work; and plaintiff says by reason of the premises it can not peaceably and successfully prosecute its said business.

"And plaintiff says it is without remedy at law and can only be fully protected and relieved in a court of equity.

"Plaintiff therefore prays that the defendants, their associates, and confederates be enjoined by a temporary order of injunction, to be made final upon the hearing of this cause, issued out of this court, from in any manner interfering with the employees of this plaintiff, now in the employ of the plaintiff, and from in any manner interfering with any person who may desire to enter the employ of this plaintiff, by the use of threats, personal violence, intimidation, or other means calculated to terrorize or alarm the plaintiff's employees, in any manner or form whatever; and that said defendants and their associates and confederates aforesaid be restrained by the order of this court from undertaking by the use of the means aforesaid to induce or to cause any of the employees of this plaintiff to quit the employment of this plaintiff, and that the defendants aforesaid and their associates and confederates be enjoined from congregating or loitering about the premises of this plaintiff at the place aforesaid, and that they be required by the injunction of this court to go about their ordinary business and to abstain from in any way interfering with the business of this plaintiff, and for such other and further and general relief as may to the court appear proper in the premises."

The case was tried before the Hon. L. B. VALLIANT, one of the judges of that court, who on sustaining the demurrer delivered the following opinion:

"The amended petition states in substance that the plaintiff conducts a large shoe manufactory in this city and has in its employ some eight or nine hundred persons, all of whom are earning their living in plaintiff's employment, and are desirous of so continuing; that the defendants, except two of them, were lately in plaintiff's employ but have gone out of the same on a strike and are now, with the other two defendants, engaged in an attempt to force the other employees of plaintiff to quit their work and join in the strike, and that to accomplish this purpose they are intimidating them with threats of personal violence; that among the plaintiff's employees who are thus threatened are about three hundred women and girls and two or three hundred other young persons; that the effect of all this on the plaintiff's business if the defendants are allowed to proceed would be to inflict incalculable damage.

"Upon filing this amended petition and the plaintiff's giving bond, as required by law, a temporary injunction issued restraining the defendants from attempting to force the plaintiff's employees to leave their work by intimidation and threats of violence, or from assembling for that purpose in the vicinity of plaintiff's factory.

"The defendants have appeared by their counsel and, by their demurrer filed, admit that all the statements of the amended petition are true; but they take the position that even if they are doing the unlawful acts that they are charged with doing, still this court has no right to interfere with them, because they say that what they are doing is a crime by the state law of this state, and that for the commission of a crime they

can only be tried by a jury in a court having criminal jurisdiction.

"It will be observed that the defendants do not claim to have the right to do what the injunction forbids them doing; their learned counsel even quotes the statute to show that it is a crime to do so; but he contends that the constitution of the United States and the constitution of the state of Missouri guarantee them the right to commit crime with only this limitation, to wit: that they shall answer for the crime, when committed, in a criminal court, before a jury; and that to restrain them from committing crime is to rob them of their constitutional right of trial by jury.

"If that position be correct, then there can be no valid statute to prevent crime. But that position is contrary to all reason. The right of trial by jury does not arise until the party is accused of having already committed the crime. If you see a man advancing upon another with murderous demeanor and a deadly weapon, and you arrest him, disarm him, you have perhaps, prevented an act which would have brought about a trial by jury, but can you be said to have deprived him of his constitutional right of trial by jury? The train of thought put in motion by the argument of the learned counsel for defendants on this point leads only to this end, to wit, that the constitution guarantees to every man the right to commit crime so that he may enjoy the inestimable right of trial by jury.

"Passing now to the question relating to the particular jurisdiction of a court of equity, we are brought to face the proposition that a court of equity has no criminal jurisdiction, and will not interfere by injunction to prevent the commission of a crime. These two propositions are firmly established; and as to the first, that a court of equity has no criminal jurisdiction,

there is no exception.   As to the second, that a court
of equity will not interfere by injunction to prevent the
commission of a crime, that, too, is perhaps without
exception when properly interpreted; but it is some-
times misinterpreted.   When we say that a court of
equity will never interfere by injunction to prevent the
commission of a crime, we mean that it will not do so
simply for the purpose of preventing a violation of a
criminal law.   But when the act complained of threatens
an irreparable injury to  the property of an individual,
a court of equity will interfere to prevent that injury,
notwithstanding the act may also be a violation of a
criminal law.   In such case the court does not inter-
fere to prevent the commission of a crime, although
that may incidentally result, but it exerts its force to
protect the individual's property from destruction, and
ignores entirely the criminal portion of the act.   There
can be no  doubt of the jurisdiction of a court of equity
in such a case.

"On this question  counsel have cited cases in
which courts of equity have been denied jurisdiction to
enjoin the publication of a libel, and in those opinions
are to  be found the general statement of the propo-
sition above mentioned.   But the law of libel is pecul-
iar, and  those cases turn upon  that peculiarity.   The
freedom of the press has  been so jealously guarded,
both in England and in this country, that our law of
libel is like no other law on the books.   Our constitu-
tion provides that a man may say, write, and publish
"whatever he will," being answerable only for the
"abuse of liberty."   Libel is the only act injurious to
the rights of another which a man can not, under
proper conditions, be restrained from committing;
and that is so because the constitution says he shall
be allowed to do it and answer for it afterward.

"Equity will not interfere when there is an adequate remedy at law. But what remedy does the law afford that would be adequate to the plaintiff's injury? How would their damages be estimated? How compensated? The defendants' learned counsel cites us to the criminal statute, but how will that remedy the plaintiff's injury? A criminal prosecution does not propose to remedy a private wrong. And even if there was a statute giving a legal remedy to plaintiff, it would not oust the equity jurisdiction. The legal remedy that closes the door of a court of equity is a common law remedy. Where equity had jurisdiction because the common law affords no adequate remedy, that jurisdiction is not affected by a statute providing a legal remedy. What a humiliating thought it would be if these defendants were really attempting to do what the amended petition charges, and what their demurrer confesses, that is, to destroy the business of these plaintiffs, and to force the eight or nine hundred men, women, boys, and girls who are earning their livings in the plaintiff's employ, to quit their work against their will, and yet there is no law in the land to protect them!

"The injunction in this case does not hinder the defendants doing anything that they claim they have a right to do. They are free men, and have a right to quit the employ of plaintiffs whenever they see fit to do so, and no one can prevent them; and whether their act of quitting is wise or unwise, just or unjust, it is nobody's business but their own. And they have a right to use fair persuasion to induce others to join them in their quitting. But when fair persuasion is exhausted they have no right to resort to force or threats of violence. The law will protect their freedom and their rights, but it will not permit them to destroy the freedom and rights of others. The same law which

guarantees the defendants in their right to quit the employment of the plaintiffs at their own will and pleasure also guarantees the other employees the right to remain at their will and pleasure.

"These defendants are their own masters, but they are not the masters of the other employees, and not only are they not the masters of the other employees, but they are not even their guardians.

"There is a maxim of our law to the effect that one may exercise his own right as he pleases, provided that he does not thereby prevent another exercising his right as he pleases. This maxim, or rule of law, comes nearer than any other rule in our law to the golden rule of divine authority: 'That which you would have another do unto you, do you even so unto them.' Whilst the strict enforcement of the golden rule is beyond the mandate of a human tribunal, yet courts of equity, by injunction, do restrain men who are so disposed from so exercising their own rights as to destroy the rights of others.

"The demurrer to the amended petition is overruled."

The law applicable to the case is so clearly stated in this opinion of the learned judge, that to add any thing to it would be a work of supererogation. We adopt it as the opinion of this court and affirm the judgment. All concur.