BERRY FOUNDRY COMPANY, Respondent, v. INTERNATIONAL MOULDERS UNION et al., Appellants.

Kansas City Court of Appeals, January 19, 1914.

1. INJUNCTIONS: Labor Unions: Pickets: Conspiracy. Laborers belonging to an organization have a right to quit work, in a body, if they are dissatisfied with their employer. And they have a right to have "pickets" peaceably and quietly talk to others in an endeavor to persuade them not to take their places. But in a prosecution of a strike they have no right to conspire to break up their late employer's business; and if they do an injunction may issue.

2. ———: ———: Threats: Violence. Persons who have quit the service of their employer in a strike have no right to interfere with the employer's business, nor in his procuring other employees, by resorting to threats, violence or other unlawful conduct. If they do they become lawbreakers endeavoring to injure another and may be enjoined.

3. ———: ———: Counter Violation of Law. The fact that persons who have been employed by another go on a strike and prosecute it by conspiring to ruin his business and by assaulting, threatening and beating persons who have been engaged to take their places, are in turn and in resistance, given rough and unlawful treatment, will not justify the unlawful course entered upon by the strikers.

4. ———: ———: Damages: Loss of Profits. Former employees who have gone on a strike and who have conspired to injure their former employer's business and do injure it by violence and intimidation, so that there is a financial loss of profits, these may be assessed against them in an injunction proceeding.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin*, Judge.

AFFIRMED.

*Mytton & Parkinson* for appellants.

(1) The locked out employees were within their legal rights in picketing the plaintiff's plant in a peaceable, quiet and orderly manner. St. Louis v. Gloner, 210 Mo. 502; Shoe Co. v. Saxey, 131 Mo. 212; Door Co. v. Fuelle, 215 Mo. 421. (2) The judgment for damages herein based upon the evidence of loss of profits was too remote, speculative and dependent upon changing circumstances to warrant it in law. Howard v. Manufacturing Co., 139 U. S. 199; Gas Co. v. Siemens Co., 152 U. S. 200; Lund v. Tyler, 115 Iowa, 236; Bierbach v. Rubber Co., 54 Wis. 208.

*John E. Dolman* for respondent.

(1) The law recognizes the right of workingmen to unite and to invite others to join their ranks, thereby making available the strength, influence and power that come from such association. But the very fact that it is lawful to form these bodies with multitudes of members means that they have thereby acquired vast power in the presence of which the individual may be helpless. This power, when unlawfully used against one, cannot be met, except by his purchasing peace at the cost of submitting to terms which involve the sacrifice of rights protected by the Constitution; or by standing on such rights and appealing to the preventive powers of a court of equity. When such appeal is made it is the duty of government to protect the one against the many as well as the many against the one. Gompers v. Stove & Range Co., 221 U. S. 418-439; Door Co. v. Fuelle, 215 Mo. 421-449-450; Shoe Co. v. Saxey, 131 Mo. 212; Iron Moulders' Union v. Allis-Chambers Co., 166 Fed. 45; Hopkins v. Stave

Co., 83 Fed. 912-917; Union v. Barnes, 232 Ill. 424, 14 L. R. A. (N. S.) 1018; Jones v. Van Winkle Works, 17 L. R. A. (N. S.) 848, 852.    (2) Proof of the expenses and of the income of the business for a reasonable time anterior to and during the interruption or stoppage of the business or of facts of equivalent import constitute the proper standard by which to measure the damages during the period of its enforced idleness.    Morrow v. Railroad, 140 Mo. App. 200-214; Coal Co. v. Hartman, 111 Fed. 96; Loder v. Jayne, 142 Fed. 1010; McGinnis v. Hargrove, 163 Mo. App. 20-27; Viernow v. Carthage, 139 Mo. App. 276.    (3) Plaintiff's evidence concerning his losses did not consist of guesses and estimates made by the witness, who was plaintiff's auditor, but consisted of actual facts within the personal knowledge of the witness, aided by books of original entry to refresh his memory, and which method of proof is competent and proper.    Gardener v. Gas Co., 154 Mo. App. 666-676; State v. Carpenter, 216 Mo. 442-449; Ward v. Transfer Co., 119 Mo. App. 83-92; Wigmore on Evidence, sec. 758.

ELLISON, P. J.—This proceeding was instituted by plaintiff filing a bill for injunction against defendants and for damages for unlawful acts charged in the petition.    The circuit court issued a temporary writ which was afterwards made perpetual, and gave plaintiff damages in the sum of two thousand dollars. An appeal was taken to the Supreme Court and the latter transferred the case to this court on the ground that it did not have jurisdiction.

It appears that plaintiff conducted a foundry in the city of St. Joseph in which large numbers of workmen were employed and turned out, as completed work, large quantities of iron castings.    These employees belonged to an organization known as Union Labor. Plaintiff had been paying the men by the day, but

concluded to change to the plan of paying by the piece.
To this the workmen, through their organization, ob-
jected. One Wilkerson managing officer for the Union,
conferred with Berry the chief officer of the plaintiff
company, but they failed to agree. It was shown by
testimony for plaintiff that defendant's manager then
said to Berry, ''Do you realize what you are going up
against? Don't you know we put the Kansas Wire &
Iron Works in the hands of a receiver?'' Berry an-
swered, ''I don't know as to that.'' When Wilker-
son answered, ''We did, and there is the United Iron
Works, Springfield, Missouri; they haven't paid a div-
idend since we struck the shop;'' and the ''stockhold-
ers down there are jumping over themselves to sell the
shop, only have a few working there; I can go down
there and pull them out any time I want to.'' At the
close of this conversation Wilkerson said he would
''call the boys out to-night,'' Saturday; and Monday
morning the men quit work and the strike began, with
portions of the strikers doing ''picket duty.''

Plaintiff immediately advertised for men to take
their places and numbers, either through the adver-
tisement, or from otherwise hearing that employment
could be had at the foundry, applied for work. A por-
tion of these were turned back by the strikers, while
others took employment in spite of opposition. It is
the character of this opposition that makes up the dis-
pute between the parties; plaintiff insisting that it
consisted of brutal breaches of the peace, the terroriz-
ing of its new employees, by stoning them and pursu-
ing them on street cars and other unlawful harass-
ments designed and intended to break up its business;
while defendants contends that their conduct was con-
fined to mild requests, made in a lawful and respectful
way. Whichever of the parties is right in this radical
difference of fact is entitled to prevail. For it has
been determined by the Supreme Court of the State
that laboring men have a legal right to strike and quit

work in a body and that they have a right to post men near by to quietly and peaceably persuade other workmen not to take their places. [City of St. Louis v. Glover, 210 Mo. 502; Shoe Co. v. Saxey, 131 Mo. 212.] But they have no right to break the law by using force, intimidation or threats. Nor have they any right to conspire to break up their late employer's business. [Door Co. v. Fuelle, 215 Mo. 421.]

The evidence makes a large volume of printed matter. It is quite clear that much of it is poisoned by passion and resentment and other parts by sympathy. The language of great portions is unprintable. Defendants say that plaintiff imported numbers of burglars, thieves, army deserters and drunkards to overawe and terrorize them. Much testimony was introduced by defendants tending to show the mildness of their behavior and the lawfulness of their conduct. Doubtless many of them were seen by different witnesses when there was no disturbance at hand; for it is not pretended that during the long time covered by this trouble, there was no intermission. But that defendants were guilty of gross violations of the law and the use of gross epithets—that they terrorized, chased, assaulted and beat men whom plaintiff had employed is established by officers and other witnesses. Some of these employees lived in St. Joseph and if they attempted to go home or if others attempted to go outside the buildings, they were followed into the street cars by persons carrying brickbats. They were assaulted and beaten. In one instance when a man who had worked in the foundry and refused to strike was either going into the city or to his home, he was seen, followed, overtaken and assaulted by several. In his resistance he cut one of them with a knife for which he was arrested. That he was pursued and beaten, there can be no question. The account of it given by the party who pursued him is inconsistent and unreasonable. He said, that he happened to see him and

another on the opposite side of the street and he con-
cluded to have a talk with him. To do so he jumped on
a passing wagon so as to overtake them. He said
that all he did as he approached was to place his hand
on his shoulder and say "Partner, I would like to
speak to you a minute," and just then, the ground be-
ing frozen, he slipped and fell and pulled the man
down with him, the man sitting and he on one knee
when the man drew a knife and cut him. He said he
did not take hold of the man's collar, nor did he hit
him with a brick and he did not know why his head
was bloody. He was a large man while the other was
small and altogether his story is scarcely worthy of
serious consideration.

Amid all the contradiction of witnesses and the
exaggeration of statement, the indisputable fact stands
out that defendant's manager Wilkerson in resent-
ment over plaintiff's changing the plan of work and
payment of wages, determined to ruin plaintiff's busi-
ness and order a strike. The testimony showed
that such, in effect, was his threat and he sat by in
court and did not deny it. And in carrying out the
strike, instead of mild, peaceful and merely persua-
sive means, defendants terrorized those who were will-
ing to work, so that they were compelled to stay in-
side the foundry premises and eat and sleep there;
and if they went abroad, were frequently compelled
to have the protection of officers. In our opinion the
trial court came to the only conclusion justified by a
proper consideration of the evidence.

It must not be supposed that we have overlooked
evidence bearing on the conduct of plaintiff's men
while confined in the foundry and at other places.
Much of it, no doubt, was reprehensible. But the
primary question which the case presents is what did
*defendants* do—what was *their* purpose? If one sets
out to break the law and meets his match, we do not
see that it helps him out any to show that fact when

he is called to account. It is no justification for a law-breaker to show that in the prosecution of that purpose he met with ruffians who undertook to rival him in criminal conduct, in coarseness of behavior and foulness of speech.

We think the trial court properly allowed damages as prayed in plaintiff's bill. We think they are not justly liable to be called speculative, or remote. With what was shown to have been done by defendants, serious and substantial damages must necessarily have followed. And they were in such conservative amount (being put at two thousand dollars by the trial court) that we think there would be no justification for us to reverse the judgment on account of some supposed error in ascertaining them, when the whole record plainly shows a greater sum than the judgment. It appears that on account of the assaults, threats and intimidations of defendants, plaintiff was compelled to provide for new employees inside the buildings—beds were put up and a restaurant established.

We do not think there was any error in allowing loss of profits as a part of the damage. If one loses profits by the wrongful act of another there is no more reason why he should not be reimbursed for such loss than if it had been of some other nature. The only difficulty concerning such character of damage (it being in some degree intangible) is that it is frequently impossible to show it with that degree of certainty the law requires, and it becomes so much a matter of guess and speculation that it is disallowed. But in this case, it seems to us to have been demonstrated by the records of the company's business, expenses, income, numbers employed and mode of operation, immediately preceding defendant's unlawful interference and immediately afterwards. Imaginary conclusions found no place in making up the total sum; on the contrary the rules frequently laid down were followed. [Mor-

row v. Ry. Co., 140 Mo. App. 200; Grant v. Ry. Co., 149 Mo. App. 306; Vierrow v. Carthage, 139 Mo. App. 276; McGinnis v. Hargrove, 163 Mo. App. 20.]

The conclusion of the trial court was manifestly right and the judgment will be affirmed. All concur.