F. C. CHURCH SHOE COMPANY, a Corporation Appellant, v. PERCY TURNER, DAN CURLEY, ALBERT McKENZIE, GEO. RATHMAN, ED. WATHEN, WALTER VREDENBURGH, HARRY MAYER, WALTER CAJACOB, WM. HEAVEN, JOHN SERTL, JOHN BOETTGES, EDWARD MUELLER, FRANCIS HICKEY, JAMES WOOTEN, WALTER NEIDERBREMER, JOHN JONES, JOE SYKORA, LEO CREAMER, FRANK PEER, FRED SAENGER, STEVE GARSKI, BEN DURANSKI, THOS. KANE, A. ADAMEK, DAN HUNT, A. A. BATH, JOHN M. CLARK, THOMAS WALLACE, WM. HALLERMAN, JOHN KEMPER, WM. THOMPSON, CHAS. ROHLFING, TONY PAPROCK, JAMES MURRAY, JAS. McDONOUGH, AL. STAHLBERG, WALTER GROSS, FRED O'BROCK, WM. KELLY, ED. WERNER, ARCHIE VIE, WM. VON BARGEN, GEO. JANSEN, WALTER KOHRING, HERBERT FANNING, ROY WALTON, and JOHN KAMP, Respondents.*

St. Louis Court of Appeals.    Opinion Filed January 5, 1926.

1. **APPEARANCES: Answer: Plea in Abatement: Sustained as to Certain Defendants: Effect.** Where, in an injunction suit against certain voluntary associations of shoe workers and others, a plea in abatement was sustained as to such associations and thereafter an answer consisting of a general denial was filed by other defendants generally, the names of individual defendants filing same not being specified therein, such answer did not operate as a voluntary appearance of the associations since, when the plea in abatement was sustained, they were thereafter out of the case and it was no longer incumbent upon them to file an answer.

2. **AMENDMENTS: Parties: Amendment By Interlineation of Answering Defendants: Proper.** In an injunction suit against voluntary associations of shoe workers and others, in which a plea in abatement had been sustained as to such associations and thereafter a general denial was filed by other defendants generally, it was proper to allow such answer to be amended by the interlineation

of the names of the individual defendants showing that it was filed only by such defendants.

3. **APPELLATE PRACTICE**: Exceptions: Not Saved: Action of Trial Court Not Reviewable on Appeal. Under. section 1512, Revised Statutes 1919, the appellate court is precluded from passing upon the action of a trial court in sustaining a plea in abatement or permitting an amendment of an answer by interlineation, such not having been made a matter of exception in the lower court.

4. **INJUNCTIONS**: Picketing: Stopped Before Final Hearing: No Defense Against Prayer for Permanent Injunction. Where the right to an injunction against picketing exists at the time suit is filed, the fact that such picketing subsequently ceased prior to the final hearing of the case is no defense against a prayer for a permanent injunction.

5. **APPELLATE PRACTICE**: Judgment of Trial Court: No Reason Assigned: Assignment of Error Based on Alleged Finding Not Shown By Record: Not Considered. Where, in an injunction suit seeking to enjoin picketing, the trial court rendered its judgment and finding in favor of defendants and dismissed plaintiff's bill and assigned no reason therefor, an assignment of error by the plaintiff, that the court made such finding because the picketing by the defendants had ceased after the suit was filed and prior to the final judgment, cannot be considered on appeal because not shown by the record.

6. **INJUNCTIONS**: Labor Contracts: Third Party Seeking to Compel Breach: Unlawful. It is unlawful for a disinterested third party to seek to compel the breaking of a contract entered into between an employer and its employees.

7. **PICKETING**: Peaceable: Former Employees Attempting to Influence Actual or Expectant Employees: Lawful. Where a shoe factory closed, and thereafter on reopening, in securing employees, limited itself strictly to those who were members of a certain union or who were willing to become members, former employees were within their rights insofar as they attempted peaceably to persuade plaintiff's employees, actual or expected, either to leave or not to enter its employ, even though the ultimate effect of such conduct should be the breaking of the contract entered into between plaintiff and the union.

8. ———: ———: Lawful. Picketing, in the absence of violence, threats or intimidations and for the purpose of peaceable persuasion, argument or entreaty, is lawful.

9. ———: Injunctions: Nuisance: Evidence: Question of Fact. When intimidation, threats and violence are resorted to, the picketing so conducted may properly be held to establish a nuisance, and is subject to be enjoined, and whether or not such acts constitute a nuisance is not so much a matter of law as a question of fact.

10. INJUNCTIONS: Picketing: Intimidation: Conspiracy: Ratification. Acts of violence and intimidation of employees by persons other than defendants did not entitle plaintiff to a permanent injunction against the defendants picketing, in the absence of ratification of such acts by defendants, or conspiracy.

11. LABOR UNIONS: Members: Liable for Acts of Officers Within Scope of Authority. Members of a labor union are liable for the acts of its officers and agents when acting for the union and within the scope of their authority.

12. INJUNCTIONS: Evidence: Alleged Acts Against Specified Individuals: Must Be Proven: Injunction Operates in Personam. Plaintiff, having alleged that certain specific individuals were guilty of such acts of violence, intimidation, and coercion as to establish a private nuisance in and around its factory, in order to obtain relief must prove its charge against such individuals and no others, inasmuch as an injunction operates in personam.

13. APPELLATE PRACTICE: Equity Case: Evidence: Conflicting: Deference to Chancellor. Where facts as to violence in picketing were conflicting and close, it was within the province of the appellate court to defer to the finding of the chancellor because of his better position to determine the credibility of the witnesses.

14. INJUNCTIONS: Picketing: Nuisance: Evidence: Profane Language in Presence of Ladies: Insufficient to Create Nuisance Authorizing Injunction. Profane language of a picket in the presence of two ladies occurring two blocks from plaintiff's factory, though reprensible and not to be condoned, was not sufficient to create a nuisance in such close proximity to plaintiff's factory as to greatly destroy or injure its value and was at most but a breach of the peace and not the proper subject of relief by injunction.

15. ———: ———: ———: Irreparable Injury. Relief by injunction against picketing presupposes acts designed to create a nuisance and calculated to work irreparable injury.

*Corpus Juris-Cyc. References; Appeal and Error, 3CJ, pp. 905, n. 24; 907, n. 43; 4CJ, pp. 663, n. 92; 900, n. 98; 1335, n. 49. Injunctions, 32CJ, pp. 77, n. 1; 179, n. 54; 181, n. 62; 182, n. 76; 229, n. 14; 347, n. 20. Labor Unions, 24 Cyc., p. 830, n. 52. Pleading, 31 Cyc., p. 468, n. 54.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Frank Landwehr,* Judge.

AFFIRMED AND REMANDED.

*Sam B. Jeffries, Arthur E. Simpson* and *Paul F. Plummer* for appellant.

(1) An answer having been filed on behalf of all of the defendants, the voluntary associations who were made defendants thereby entered their appearance in the case and this entry of appearance could not be affected by the attempt to subsequently amend the answer. Bruns v. Milk Wagon Drivers' Union, Local 603, 242 S. W. 419, 421; Floreth v. McReynolds, 205 Mo. App. 143; Wicecarver v. Insurance Co., 137 Mo. App. 247; Roberts v. Insurance Co., 201 Mo. App. 239; State ex rel. v. Grimm, 239 Mo. 135. (2) An injunction will lie to prevent third persons from causing or assisting in a breach of contract between two other persons. Hughes v. Motion Picture Machine Operators, 282 Mo. 304; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 276; 2 L. R. A. (N. S.) 202. (3) An injunction will be granted to prevent picketing where it is accompanied by violence, threats, intimidation, misrepresentation of the attitude of an employer to his employees, or coercion. Hughes v. Motion Picture Machine Operators, 282 Mo. 304; American Steel Foundries v. Tri-City Central Trades Council, 257 U. S. 184, 66 L. Ed. 189. (4) Where the right to an injunction exists at the time suit is filed and thereafter, the fact that picketing subsequently ceased prior to the final hearing in the case is no defense against injunction. Stegmann v. Weeke, 279 Mo. 131; Civic League v. City of St. Louis, 223 S. W. 891; Duff v. Russell, 14 N. Y. Supp. 134; U. S. v. Railway Employees, 283 Fed. 479; Piano & Organ Workers v. Piano & Organ Supply Co., 124 Ill. App. 353; Roberts, etc., v. City of Louisville, 92 Ky. 95.

*E. W. Foristel, Mark D. Eagleton* and *John F. Clancy* for respondent.

*James T. Roberts,* of counsel.

(1)   On appeal the presumptions are all in favor of the correctness of the rulings of the trial court.   This being an equitable action, the appellant is not in a position to complain of the action of the trial court in dismissing the bill, in that he has failed to bring up the entire record, when by so doing he could have placed before this court everything that was before the trial court. Beck v. Forsee, 199 S. W. 734; Kipner v. Stillman, 224 S. W. 321; Stowell v. Dickson, 177 S. W. 1080; Epstein v. Clothing Co., 67 Mo. App. 221.   (2)   Appellant's point 1 cannot be considered by this court.   The record does not show that appellant excepted to the action of the trial court in permitting defendants to amend their answer by inserting the names of the individual defendants.   R. S. 1919, sec. 1512; Polski v. St. Louis, 264 Mo. 463; Hafner Mfg. Co. v. St. Louis, 262 Mo. 633; Howell v. Jackson County, 262 Mo. 414; Construction Co. v. Withnell, 190 Mo. App. 33.   (3)   Appellant's contention that the trial court erred in holding that, because the picketing by the defendants had ceased after the suit was filed and prior to the final hearing, plaintiff was not entitled to a permanent injunction (see appellant's assignment of error 5 and his point 4) cannot be considered by this court for the following reasons:   (a)   The record does not disclose that the court so held.   (b)   The point was not called to the attention of the trial court in the motion for a new trial nor made a matter of exception during the trial.   (4)   Plaintiff framed his petition and tried his case on the theory that by reason of the picketing "A private nuisance has been established in such close proximity to plaintiff's said factory as to greatly injure or destroy the value of plaintiff's property and if allowed or suffered to continue will result in irreparable damage and injury thereto."   Plaintiff must try his case on appeal on the same theory he presented to the trial court and cannot shift his position in the Court of Appeals and adopt a theory different from that presented to the trial court.   Meddis v. Kenny, 175 Mo. 210; Gorham v. Railroad Co., 113 Mo. 408.   (5) . Plaintiff failed to make out a proper case for injunctive relief in that he not

only failed to show irreparable damage, but failed to show any damage at all. A court of equity will not grant an injunction where the injury is small or technical. 22 Cyc. 760; 14 R. C. L., Title ''Injunctions,'' sec. 33; Schuster v. Meyers, 148 Mo. 422; Powell v. Canaday, 95 Mo. App. 718-719; Lester R. E. Co. v. City, 169 Mo. 227; Warren v. Cavanagh, 33 Mo. App. 109.

BENNICK, C.—This is a suit in equity instituted by plaintiff on February 14, 1922, against the United Shoe Workers of America, a voluntary association, together with various locals of said union and certain members of said locals and of said union, as defendants. From the judgment of the court dismissing its bill, plaintiff has appealed.

The petition in substance alleged that on the 6th day of February, 1922, plaintiff entered into an agreement with the Boot and Shoe Workers Union to the effect that in the future plaintiff would employ in its shoe factory members of that union exclusively; that following said agreement it employed certain members of that union and desired to employ other members; that defendant, United Shoe Workers of America, was a voluntary unincorporated association having local branches in different parts of the United States, among which were the other voluntary associations named as defendants in this action; that Percy Turner was the general organizer of the United Shoe Workers of America, and that defendant Dan Curley was a member of the general executive board of said association; that the other individual defendants were members of the association and of one or the other of its local branches; that some of these individual defendants had been employed by plaintiff, but had ceased to be so employed February 1, 1922, when plaintiff shut down its factory; that there were a number of persons desirous of entering into plaintiff's employ; that the defendants combined and confederated together to terrorize and prevent the employees of plaintiff and persons desirous to enter into plaintiff's employ, all being members of the Boot and Shoe Workers Union,

from prosecuting any work in plaintiff's factory; that defendants hung about, stationed themselves and took up positions in close proximity to plaintiff's factory for the purpose of picketing the premises and putting the employees and prospective employees in fear of bodily harm, and also applied to them vile and opprobrious epithets; that the acts of the defendants were not by reason of any grievance done to them, nor for the purpose of bettering working conditions, but were for the purpose of compelling plaintiff to break- and abrogate its said contract with the Boot and Shoe Workers Union and to coerce plaintiff into employing only members of the United Shoe Workers of America; that the conduct aforesaid constituted a private nuisance in such close proximity to plaintiff's factory as to greatly destroy or injure its value.

Plaintiff prayed that the defendants be enjoined, both by temporary order and by permanent injunction, from interfering with the employees then in the employ of plaintiff, or with persons who desired to enter the employ of plaintiff, by use of threats, intimidation and personal violence, and that defendants be restrained from undertaking and inducing the employees of the plaintiff to quit, and from attempting to coerce plaintiff thereby to cease engaging members of the Boot and Shoe Worker? Union.

Upon the filing of this petition an order was issued by the circuit court commanding defendants to show cause why a temporary injunction should not be issued and upon February 17, 1922, upon motion of plaintiff, a temporary restraining order was issued by the court after plaintiff had given bond in the sum of $3,000.

On February 23, 1922, the several voluntary associations, who were named as defendants, filed a plea in abatement setting up that service of process was had upon them illegally, which plea on April 24, 1922, was sustained. .

On March 2, 1923, the remaining defendants jointly filed an answer consisting of a general denial, which

answer on April 24, 1923, by leave of court, was amended by interlineation so as to contain the names of the several individual defendants.

The evidence was to the effect that plaintiff corporation was chartered in 1917, and from that date had been engaged in the manufacture of shoes at its factory at 2801 Benton street in the city of St. Louis; that prior to February 1, 1922, it had employed approximately 200 operatives, some of whom were members of unions and others non-union.

It was disclosed that there were two national labor organizations among shoe workers, one known as the Boot and Shoe Workers International Union, which was affiliated with the American Federation of Labor, and the other the United Shoe Workers of America, which had several branches throughout the country, some of which were located in the city of St. Louis and were named as defendants in this action.

At the time plaintiff began the operation of its factory, about seventy-five per cent of the employees were members of the Boot and Shoe Workers Union, but by January, 1922, only a small per cent of the total number of employees belonged to that organization, the majority of those who belonged to any union being members of the United Shoe Workers. However, even in 1922, the employees in the cutting room were members of the Boot and Shoe Workers Union.

On the 25th of January, 1922, because of the fact that the employees in the cutting room had progressed ahead of the other departments with their work, it was decided to lay them off for a few days until the other departments could catch up with them. Shortly thereafter a committee of members of the United Shoe Workers called on Mr. R. A. Nicholson, plaintiff's superintendent, and asked for a conference with Mr. F. C. Church, plaintiff's president. The purpose of this committee was to request that when the cutting room should be reopened, members of the United Shoe Workers would be employed therein. The only answer given them by Mr. Church was

that he intended to close down the factory, the evidence disclosing that he had decided to enter into an agreement with the Boot and Shoe Workers Union that in the future he would hire only members of that organization. All of the employees were notified by their respective foremen that they should call and receive their wages in full, and on February 1 a sign was posted on the door "closed down indefinitely."

On February 6th the contract with the Boot and Shoe Workers Union was signed and the factory reopened on February 9th, at which time notices were inserted in the public press that plaintiff would employ members of the Boot and Shoe Workers Union and would give preference to its former employees in hiring operatives. Thereafter in securing employees plaintiff limited itself strictly to those who were members of the Boot and Shoe Workers Union or who were willing to become members.

As soon as the factory was reopened, preparations were made by the locked-out employees for picketing the plant. These arrangements were perfected at daily meetings held by the former employees or "shop-crews" at which time the pickets were selected. The daily meetings were not restricted to members of the United Shoe Workers, but former employees of plaintiff, though not belonging to that organization, were permitted to be in attendance and in some instances were selected for picket duty. Plaintiff's own evidence shows that the object in placing pickets was to inform prospective employees that the former employees had been locked out and to peaceably persuade them not to enter plaintiff's employ. The number of pickets stationed around the factory at any one time ranged from four to ten. Picketing continued from the time the factory reopened until the summer of 1922. During that time from ten to twelve police officers were stationed in the neighborhood of plaintiff's factory to preserve order. Plaintiff's evidence tended to show certain acts of violence which will be discussed in detail later in the opinion. On the other hand, violence was

denied by all of defendants' witnesses, among whom were the sergeant in charge of the detail of police and two of his men, incidentally the only police officers called to the stand.

Much difficulty was experienced by plaintiff in securing enough employees to enable it to operate its plant at full capacity. At the time this suit was filed, plaintiff had about eighty-five employees, many of whom were inexperienced. The number was greatly increased, but it was not until the latter part of April, 1922, that there were sufficient operatives to enable plaintiff to proceed with its business on the basis of full time production. During the *interim* plaintiff was unable to get out many of the orders which it had for shoes, and some of the orders were canceled. It was the contention of the defendants that inasmuch as the orders which plaintiff was unable to fill had been taken in November and December, 1921, and January, 1922, and that at the time the factory was closed there were orders enough on hand to run the factory for ninety days, the loss incurred by plaintiff was due to its voluntary act in disrupting its organization.

The first alleged error assigned by plaintiff is the action of the court in permitting defendants to amend their answer by interlineation on April 24, 1923, so as to show that it had been filed only by the individual defendants. It will be recalled that on February 23, 1922, the several voluntary associations originally named as defendants filed a plea in abatement, which plea on April 24, 1922, was sustained. Thereafter, on March 2, 1923, an answer consisting of a general denial was filed by defendants generally, the names of the individual defendants filing same not being specified therein. It is plaintiff's contention that the filing of the answer on March 2, 1923, operated as a voluntary entry of appearance of those defendants whose plea in abatement had been sustained approximately one year before, and that, having entered their appearance, it was error for the court to permit the answer to be amended so as to indicate that they were not in the case. However, we do

not think that this argument is well taken. When the plea in abatement was sustained, the voluntary associations were thereafter out of the case and it was no longer incumbent upon them to file an answer. However, there were forty-seven individual defendants left, so that the use of the word "defendants" in the answer was entirely proper, and because of its use there is no justification for saying that it included not only the defendants still in the case but also those whose plea in abatement had been sustained. But be this as it may, the assignment is not before this court for review for the reason that no exception was saved by plaintiff below, either to the action of the court in sustaining the plea in abatement, or in permitting the amendment of the answer by interlineation. Consequently, under section 1512, Revised Statutes 1919, this court is precluded from passing upon this point, it having not been made a matter of exception by plaintiff in the lower court. [Hafner Mfg. Co. v. City of St. Louis, 262 Mo. 621, 172 S. W. 28; Hughes v. Mississippi R. & B. T. Ry. (Mo. Sup.), 274 S. W. 703; Gate City National Bank v. Miners' & Farmers' Bank, 259 Mo. 551, 168 S. W. 725; Bush Const. Co. v. Withnell, 190 Mo. App. 33, 175 S. W. 260; Pickel v. Pickel, 176 Mo. App. 673, 159 S. W. 774; Dempsey v. Pérle (Mo. App.), 218 S. W. 425.]

Another error assigned by plaintiff is the alleged holding of the court that, because the picketing by the defendants has ceased after the suit was filed and prior to the final hearing, plaintiff was not entitled to a permanent injunction. A number of cases are cited to the effect that, where the right to an injunction exists at the time the suit is filed, the fact that picketing subsequently ceases prior to the final hearing in the case is no defense against a prayer for a permanent injunction. We have no fault to find with plaintiff's statement of that rule of law, but its assignment of error in this respect cannot be considered for the reason that the abstract of the record does not show that the court made any such finding as alleged by plaintiff. The judgment of the

court, as it appears in the abstract, merely shows that the court rendered its judgment and finding in favor of the defendants and dismissed plaintiff's bill, no reason being assigned therefor.

Plaintiff's three remaining assignments of error, that the court erred in dissolving the temporary restraining order upon final hearing, in dismissing plaintiff's bill and in refusing to grant a permanent injunction, may all be considered together, in that in effect they constitute but a single assignment that the finding of the court should have been in favor of plaintiff instead of for the defendants.

. Addressing ourselves to a determination of that question, therefore, we find that this case was tried in the circuit court and briefed and argued here upon the theory that plaintiff was entitled to injunctive relief for two reasons: First, that defendants were unlawfully seeking to compel plaintiff to break and abrogate its contract with the Boot and Shoe Workers Union; and second, that defendant's conduct had been such as to establish a private nuisance in such close proximity to plaintiff's factory as to greatly destroy or injure its value.

In support of its first contention that defendants' conduct was unlawful and was the subject of injunctive relief for the reason that they were seeking to compel plaintiff to break its contract with the Boot and Shoe Workers Union, plaintiff cites two cases, Hughes v. Motion Picture Operators, 282 Mo. 304, 221 S. W. 95, and Hitchman Coal & Coke Company v. Mitchell, 245 U. S. 229.

In the Hughes case, Hughes was the proprietor of a moving picture show and defendants were members of the motion picture operators. Hughes operated his own projecting machine, and the defendants were seeking to compel him to employ a regular operator instead of doing the work himself. Their request being denied by Hughes, pickets were placed outside of the theater and patrons were warned not to patronize the place on the

ground that it was unfair to organized labor. Our Supreme Court very properly directed the trial court to issue a permanent injunction against defendants restraining them from picketing in front of plaintiff's theater for the reasons that the right of Hughes to operate his own machine and thereby keep down the expenses of the business was the simple and primitive right of a man to earn a livelihood with his own hands and that no grievance of organized labor was involved in the case.

In the Hitchman case, there was no strike or lookout of former employees. Mitchell was an officer of the United Mine Workers of America and had come into the district where the Hitchman mine was located for the purpose of organizing the employees into unions. In the agreement between the Hitchman Coal Company and its employees there was a proviso that, in the event the employees joined a union, their contract of employment would thereby be automatically canceled. The United States Supreme Court very properly held that Mitchell, inasmuch as he was acting without any agency for the Hitchman employees, should be enjoined from attempting to carry out his purpose.

But these two cases are clearly distinguishable from the case at bar, in that in neither of them had the relation of employer and employee ever existed between the parties. We readily agree that it is unlawful for a disinterested third party (as Mitchell was) to seek to compel the breaking of a contract entered into between an employer and its employees, but no case has been called to our attention, nor has our search disclosed one, in which employees, former (as defendants were) or expectant, are placed in the same category in this respect as disinterested parties.

In the Hitchman case, Mr. Justice PITNEY, who wrote the majority opinion for the court, very clearly made this distinction, when he said on pages 252 to 253:

"The case involves no question of the rights of employees. Defendants have no agency for plaintiff's em-

ployees, nor do they assert any disagreement or griev-
ance in their behalf. In fact, there is none; but, if
there were, defendants could not, without agency, set up
any rights that employees might have.''

The only language in the Hughes case that bears up-
on the question as to whether or not a combination to
procure breaches of contract by a company's employees
is a violation of that company's rights is either quoted
*verbatim* from or used in reference to the Hitchman
case. Consequently neither of those cases is any au-
thority for plaintiff's contention that it was unlawful
for defendants to seek to compel plaintiff to abrogate
its contract with the Boot and Shoe Workers Union,
assuming such to have been their purpose.

The distinction between the Hughes and Hitchman
cases and the one at bar with reference to the difference
between the status of former employees (as defendants
were) and that of rank outsiders, is clearly illustrated
(and in fact expressly made) in the very late and im-
portant case of American Steel Foundries v. Tri-City
Central Trust Council, 257 U. S. 184, wherein Mr. Chief
Justice TAFT, in discussing the Clayton Act, on page 203
said:

''It is clear that Congress wished to forbid the use
by the Federal courts of their equity arm to prevent
peaceable persuasion by employees, discharged or ex-
pectant, in promotion of their side of the dispute, and to
secure them against judicial restraint in obtaining or
communicating information in any place where they
might lawfully be. This introduces no new principle in-
to the equity jurisprudence of those courts. It is mere-
ly declaratory of what was the best practice always.''

On page 206, particular emphasis is given to the
rights of ex-employees:

''A restraining order against picketing will advise
earnest advocates of labor's cause that the law does not
look with favor on an enforced discussion of the merits
of the issue between individuals who wish to work, and
groups of those who do not, under conditions which sub-

218 Mo. App.—34.

.ject the individuals who wish to work to a severe test of their nerve and physical strength and courage. But while this is so, we must have every regard to the congressional intention manifested in the act and to the principle of existing law which it declared, that ex-employees and others properly acting with them shall have an opportunity, so far as is consistent with peace and law, to observe who are still working for the employer, to communicate with them and to persuade them to join the ranks of his opponents in a lawful economic struggle.''

We think it is clear, therefore, that defendants, in the light of the American Steel Foundries case, were within their rights in so far as they attempted peaceably to persuade plaintiff's employees, actual or expectant, either to leave or not to enter its employ, even though the ultimate effect of such conduct should be the breaking of the contract entered into between plaintiff and the Boot and Shoe Workers Union and that, in so far as this part of its case was concerned, plaintiff was clearly not entitled to the relief sought.

It will be observed, however, that we have qualified defendants' right of persuasion by saying that it must be carried on peaceably. That brings us to a consideration of plaintiff's second contention—in support of its prayer for an injunction—that defendants' conduct had established a private nuisance in such close proximity to plaintiff's factory as to greatly destroy or injure its value.

A great part of plaintiff's evidence seems to have been introduced upon the theory that picketing is unlawful *per se*. But such is not the law. Picketing, in the absence of violence, threats or intimidation and for the purpose of peaceable persuasion, argument or entreaty, is lawful. [American Steel Foundries v. Tri-City Council, and Hughes v. Motion Picture Operators, supra; Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S. W. 391; Hamilton-Brown Shoe Co. v. Saxey, 131 Mo. 212, 32 S. W. 1106; City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30; Stewart Land Co. v. Perkins, 290 Mo. 194, 234 S. W. 653; In re Heffron, 179 Mo. App. 639,

162 S. W. 652; Berry Foundry Co. v. International Moulders Union, 177 Mo. App. 84, 164 S. W. 245; Root v. Anderson (Mo. App.), 207 S. W. 255.] When, however, intimidation, threats and violence are resorted to, the picketing, so conducted, may properly be held to establish a nuisance and is subject to be enjoined. Whether or not a nuisance had been established becomes, therefore, not so much a matter of law as a question of fact.

The following are the incidents cited by plaintiff which it contends are evidence of intimidation, threats and violence in such close proximity to its factory as to greatly destroy or injure its value:

Joseph Sims was assaulted one block from the factory by two parties not defendants in the case.

Harry Heenen, while at his home, was threatened by his uncle, not a defendant, that he would get his neck broken if he didn't stay away from plaintiff's factory.

Stanley Nowicki was called a "dirty Greek" by some unknown party.

William Riebel was threatened by Tom Irving, not a defendant, when one and one-half blocks from the factory.

Perry Jones was called a "scab" by certain unnamed pickets.

Christ Rallis testified that he was assaulted by defendant William Thompson two blocks away from the factory. Thompson, on the other hand, testified that Rallis was the aggressor.

Edna Ebeling and Mamie Pardick heard profane language used by defendant Thomas Kane when two blocks away from the factory.

H. J. Koching was threatened by two unnamed parties at his home; was assaulted by three strangers at 19th and Cass; heard profane language directed towards him at 15th and Cass.

These incidents show beyond peradventure of doubt that there was much bad feeling displayed between the rival parties to this labor dispute. But whether plain-

tiff established its right to injunctive relief against the respondents in this appeal is quite another question,

Our statement of the acts of violence relied on by plaintiff shows that there was but very little evidence to connect any defendant with such acts. To the contrary the testimony discloses that the parties guilty of the reprehensible conduct were either unnamed or else were not defendants to the action. Under such a state of facts, if plaintiff is entitled to a permanent injunction against the defendants in the case, it must be for one of two reasons: either that the defendants named represented or had ratified the acts of those not named, or that there was a conspiracy alleged between the parties defendant and those not defendant who were guilty of the acts of violence on account of which plaintiff seeks relief. [Scott v. Donald, 165 U. S. 107.]

In so far as establishing agency between the pickets generally and defendants is concerned, plaintiff's case was sadly weakened by the order of the court sustaining the plea in abatement of the voluntary associations originally named as defendants. That the members of a union are liable for the acts of its officers and agents when acting for the union and within the scope of their authority may not be denied. [Clarkson v. Laiblan, 202 Mo. App. 682, 216 S. W. 1029.] Yet, when the court's order was entered, so far as our record discloses, plaintiff stood mute and did not even save its exception to the order.

Nor is this a case presented to us upon a charge of conspiracy, for, even if the petition itself could be so construed, the case was neither tried before the chancellor nor briefed and argued here upon such theory. To the contrary plaintiff makes the points on appeal that an injunction will lie (1) to prevent third persons from causing or assisting in a breach of contract between two other persons, and (2) to prevent picketing where it is accompanied by violence, threats, intimidation, misrepresentation of the attitude of an employer to his employees, or coercion.

Inasmuch as an injunction operates *in personam* (Hitchman Coal & Coke Co. v. Mitchell, supra), we think that plaintiff, having alleged that certain specific individuals were guilty of such acts of violence, intimidation and coercion as to establish a private nuisance in and around its factory, in order to obtain relief must prove its charge against such individuals and no others. Accordingly, limiting ourselves to a consideration of acts alleged to have been committed by the actual defendants, we have evidence of an assault upon Christ Rallis by defendant William Thompson, the same occurring two blocks from the factory, certainly in no very close proximity to plaintiff's property. Were even this fact undisputed, it might be sufficient to make plaintiff's case because Chief Justice TAFT has said that one or more assaults may characterize a whole campaign. But Thompson swore that Rallis was the aggressor and where, as here, the facts are conflicting and close, it is within our province to defer to the finding of the chancellor because of his better position to determine the credibility of the witnesses. [Keener v. Williams, — Mo. —, 271 S. W. 489; Pfotenhauer v. Ridgway, — Mo. —, 271 S. W. 50; Scott v. Barton, 285 Mo. 427, 226 S. W. 958; Walsh v. Walsh, 285 Mo. 181, 226 S. W. 236; Gibson v. Shull, 251 Mo. 480, 158 S. W. 322; Conrad v. Boogher, 201 Mo. App. 644, 214 S. W. 211; Fernandes Grain Co. v. Hunter, — Mo. App. —, 274 S. W. 901.]

One complaint is left—the use by defendant Thomas Kane of profane language in the presence of two young ladies. The scene of this occurrence was two blocks from the factory. This act was reprehensible and must not be condoned, but of itself, it was not sufficient to create a nuisance in such close proximity to plaintiff's factory as to greatly destroy or injure its value. At most it was but a breach of the peace and certainly not the proper subject of relief by injunction which presupposes acts designed to create a nuisance and calculated to work irreparable injury.

Because of the important issues involved in this case, it has been a matter of much concern to us. But, after a most thorough review of the record, we cannot escape the conclusion that plaintiff failed to show that it was entitled to the relief sought against the defendants remaining parties to the action. Accordingly the Commissioner recommends that the judgment of the circuit court be affirmed and the cause remanded for disposition of the motion filed May 29, 1922, by defendant United Shoe Workers of America, Local No. 10, for the assessment of damages on the injunction bond.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed and the cause remanded. *Daues, P. J., Becker* and *Nipper, JJ.,* concur.